## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHADONNA SPENCER,
Parent and Next Friend of K. S.

        Plaintiffs

    v.

DISTRICT OF COLUMBIA, *et al,*.

        Defendants.

Civil Action No. _____
JUDGE: _____

## MOTION FOR TEMPORARY RESTRAINING ORDER OR
## ALTERNATIVELY MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Shadonna Spencer as parent and next friend of the minor K. S.
moves pursuant to LCvR 65 and Fed. R. Civ P. 65 (a) or (b) for a Temporary Restraining
Order or alternatively a Preliminary Injunction:

(1)    to immediately enjoin the District of Columbia Government from
removing the case of *In The Matter of K.S.* from the calendar for a due process Hearing
before a Hearing Officer at the State Education Agency for the District of Columbia.

(2)    to compel the District of Columbia Government to comply with the
*Individuals With Disabilities Education Improvement Act of 2004, 20 USC 1415 § 615
(f) (1) (A)* and provide plaintiff a due process Hearing before a Hearing Officer at the
State Education Office. *Also see, Patsel v. District of Columbia Board of Education,
522 F.Supp. 535, at 537 (D.D.C. 1981).*

1

(3)     to immediately enjoin the District of Columbia Government from engaging in settlement negotiations, resolution meetings, meetings, discussions, written communications with plaintiff that exclude or omit plaintiff's attorney.

(4)     to compel the District of Columbia Government to provide plaintiff's attorney with notice and copies of any and all written communications, pleadings , letters and documents of any and all kind concerning any and all issues of this case during the entire administrative processes.

(5)     to immediately enjoin the District of Columbia Government from concealment of the government attorney's name, address and telephone number from plaintiff's attorney during the entire administrative processes of the ***Individuals With Disabilities Education Improvement Act of 2004, 20 USC 1415 § 615 et seq.***

(6)     to enjoin defendant Quinne Harris-Lindsey from participating in the litigation of this case in any fashion whatsoever, and reviewing any vouchers for payment of attorney's fees in this case because of conflict of interest and she is a party to this suit.

In support of this Motion, plaintiffs rely upon the accompanying Memorandum of Points and Authorities, Affidavit, Transcript of Voice Mail of defendant Quinne Harris-Lindsey and tape recording of voice mail, and exhibits.

Proposed Orders are filed herewith.

Respectfully submitted,

Roy Carleton Howell, No. 415142
8003 Parkside Lane, N.W.
Washington, D.C. 20012
Home Phone (202) 545-0750
Office Phone (202) 545-0755
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

Pursuant to LCvR 16 (a) a separate certificate of counsel is duly filed with this Court certifying that this TRO, or alternatively Preliminary Injunction, with memorandum, affidavit, transcript, exhibits, and proposed Orders were hand delivered to Mayor Anthony Williams 1350 Pennsylvania Avenue, NW, Washington, D.C. 20004, Superintendent Clifford Janey 825 North Capitol Street, NE, Washington, D.C. 20002, Manager Quinne Harris-Lindsey 825 North Capitol Street, NE, Washington, and Attorney General Robert Spagnoletta 1350 Pennsylvania Avenue, NW Washington, D.C. 20004.

Roy Carleton Howell

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

SHADONNA SPENCER,
Parent and Next Friend of K. S.

      Plaintiffs


      v.                                    Civil Action No. _____
                                  JUDGE: _____

DISTRICT OF COLUMBIA, *et al,*.

      Defendants.

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN
## SUPPORT OF MOTION FOR TEMPORARY RESTRAINING
## ORDER OR ALTERNATIVELY A PRELIMINARY INJUNCTION

**I.**    **INTRODUCTION**

        Plaintiff's case has been wrongfully removed from the docket and calendar at the State Education Agency for the District of Columbia by the government, thus denying plaintiff due process of law pursuant to the ***Individuals With Disabilities Education Improvement Act (IDEIA) of 2004, 20 USC 1415 § 615 (f) (1) (A).*** Also *see, Patsel et al., v. District of Columbia Board of Education, 522 F.Supp. 535, at p. 537 (D.D.C. 1981).*

        The minor child KS has suffered irreparable injury and continues to suffer immediate, irreparable injury from the government's ongoing violation of the ***Individuals With Disabilities Education Act (IDEA), 20 USC 1400, et seq.,*** and *34 C.F.R. Part 300.* Also *see,* the implementing regulations for *§ 504 of the Rehabilitation Act,* concerning

elementary and secondary education, which are comparable in most respects to those promulgated under the *IDEA*. *34 C.F.R. Part 104*.

Moreover, the government's complete and absolute denial of a due process Hearing pursuant to the *IDEIA, 20 USC 1415 § 615 (f) (1) (A)* blocks plaintiff from any right to be heard for redress and remedy. In turn plaintiff has no other forum for relief but this court, and KS will sustain further irreparable injury and harm without immediate judicial review. This denial of due process of law violates plaintiff's federal civil rights pursuant to *42 USC 1983*.

## II.    THE IDEA, THE REHABILITATION ACT, THE ADA AND *42 USC 1983*

The *IDEA, 1400, et seq.,* guarantees that each student with a disability is ensured a free, appropriate public education, including special education and related services, at no cost to parents or guardians, to meet the unique needs of that student. As aforementioned, the implementing regulations for *§ 504 of the Rehabilitation Act*, concerning elementary and secondary education, are comparable in most respects to those promulgated under the *IDEA*. *34 C.F.R. Part 104.*

The *IDEA'* principal means of ensuring that children with disabilities receive a free appropriate public education is through comprehensive and individualized evaluations and the development of Individual Educational Program *(IEP)*, in which the child's parents and current teachers, along with other professionals, set forth the required components of an educational program designed to meet the child's unique needs. *34 C.F.R. § 300.344 et seq.,* and *34 C.F.R. § 300.345 et seq.,*. Via the combined efforts of the participants at the *IEP* meeting, a written plan must be consummated that includes:

(1) a statement of the child's present levels of education performance; (2) a statement of annual goals, including short-term instructional objectives; (3) a statement of the specific special educational and related services[1] to be provided to the child and the extent to which the child will be able to participate in regular education programs; (4) the projected dates for initiation of services and the anticipated duration of services; (5) and appropriate objective criteria and evaluation procedures for determining whether the short-term instructional objectives are being achieved. *34 C.F.R. § 300.346 et seq.*

After performing a comprehensive evaluation of the student's current functioning and needs and developing an *IEP* designed to meet the child's individual needs, the school must propose an appropriate placement for the child, *i.e.*, one that can meet the child's individual needs as determined through evaluation and set forth in the *IEP*. The school is further required to establish and maintain a continuum of alternative placements, including regular classes, special classes, special schools, home instruction, and instruction in hospitals and institutions. *34 C.F.R. §§ 300.400 – 300.403*.

Whenever the school proposes to change the educational placement of a student in special education, the school is required to provide detailed, written notice to the parents , including a full explanation of all procedural safeguards available to them, an explanation of why the school proposes to take the action, a description of any other options considered and the reasons for their rejection, a description of all bases for the school's proposal, and a description of any other factors relevant to the school's decision. *34 C.F.R. § 300.504*, *34 C.F.R. § 300.505*, and *34 C.F.R.104.36*.  Included in the required written notice of available procedural safeguards must be notice of the right to a

---

[1] Related services under the *IDEA* includes such services as psychological counseling, speech and language therapy, occupational therapy and physical therapy. *34 C.F.R. § 300.16*.

3

prior administrative Hearing if the parents disagree with the school's proposed action. *See, 20 USC 1415, et seq.*

Next, the *Individuals With Disabilities Education Improvement Act (IDEIA) of 2004, 20 USC 1415 § 615 (f) (1) (B)* requires the opportunity to a resolution meeting. Next, after exhaustion of the resolution meeting phase the *IDEIA, 20 USC 1415 § 615 (f) (1) (A)* guarantees the right to a due process Hearing.

In addition to the specific requirements of the *IDEA* and the *Rehabilitation Act* outlined above, the *Americans with Disabilities Act (ADA), 42 USC 12101 et seq.,* prohibits any public entity from employing methods of administration that have the effect of defeating or substantially impairing accomplishment of the objectives of that public entity's program with respect to individuals with disabilities, in this case, the fundamental right to a due process Hearing pursuant to *IDEIA, 20 USC 1415 § 615 (f) (1)(A)* and a free appropriate public education. *28 C.F.R. § 35.130 (b) (3) (ii)*.

Furthermore, *42 USC 1983* guarantees plaintiff the right to sue where her *IDEA, Rehabilitation Act, ADA, IDEIA,* and 14th Amendment Constitutional rights to a due process Hearing are abridged by the District of Columbia Government. Moreover, the government's refusal to provide plaintiff a due process Hearing deprived plaintiff of a "federal right" and therefore violated *42 USC 1983*. *Hunt v. Bartman, 873 F.Supp. 229, at p. 245 (W.D. Mo 1994)*.

By the government's failure to fully comply with plaintiff's federal rights to a due process Hearing in compliance with federal laws and violating the attorney-client privileged relationship, the government has violated the laws intended to guarantee due process of law and a free and appropriate education.

### III.    FACTS

KS attends Wilkinson Elementary School, a District of Columbia public school required under federal law to provide students with disabilities a free appropriate public education *(FAPE)* designed to meet their individual needs.  KS has been identified as a special needs child and receives special education and services pursuant to his Individual Education Program *(IEP)*.  On 24th November 2004 Dr. Carolyn D. Green certified school psychologist performed a psycho-educational assessment on KS and recommended a clinical psychological evaluation and a speech and language screening evaluation in order to address the ongoing disruptive behaviors of KS in school committed against teachers, staff and other children.  In contradiction to Dr. Green's orders and recommendations an *IEP* was consummated for KS which did not address the important psychological and speech issues and concerns to remedy this child's disruptive behaviors and address his emotional and academic needs to provide *FAPE*.

Therefore, the current *IEP* for this minor child KS does not provide him *FAPE* in view of the government's failure to comply with *34 C.F.R. § 300.532 (g)* and *(j)*; also *see Board of Education of the Hendrick Hudson Central School District v. Rowley, 458 U.S. 176, at pp. 181-182 (1982)*.  Wherefore, KS' special education determinations, related services programs and placement articulated in his *IEP* are all invalid, defective and inappropriate. In turn KS has suffered irreparable injury and will continue to suffer irreparable injury to his young emotional well being, and special educational advancement while realizing substantial overall set backs socially and academically.

Subsequently, on 6th December 2005 plaintiff's attorney filed a request for a

due process Hearing with the State Education Agency for the District of Columbia asserting that the government violated *34 C.F.R. § 300.532 (g)* and *(j)* for failure to execute the necessary and proper numerous evaluations and assessments as ordered and recommended by Dr. Green to address KS' significant emotional, physical and academic problems for *IEP* execution. *See,* Exhibit # 1. Furthermore, plaintiff sued at the administrative level to compel the government to conduct a psycho-educational reevaluation pursuant to *34 C.F.R. § 300.536 (b)* to be considered in conjunction with Dr. Green's original orders and recommendations that the psycho-educational, clinical psychological and speech and language screening/evaluation all be current and considered together in executing the *IEP*.

Although the last psycho-educational assessment was conducted on 24th November 2004, in addition to the logic of Dr. Green's concomitant reasons, the circumstances and conditions in KS' case warranted immediate psycho-educational reevaluation. Indeed, since the original psycho-educational assessment of approximately a year and one month ago, KS has constantly been in serious trouble with the school administration concerning his extreme and outrageous behaviors coupled with his academic, social and emotional retrogression.

The remedy of plaintiff's administrative complaint was execution of a clinical psychological evaluation, speech and language screening/evaluation and psycho-educational reevaluation for consideration by a multidisciplinary team *(MDT)* for execution of an appropriate *IEP* to provide *FAPE* pursuant to the *IDEA*.

On the 9th December 2005 plaintiff's attorney received a **SCHEDULING MEMORANDUM** from the government. *See,* Exhibit # 2. This **SCHEDULING**

6

**MEMORANDUM** stated the deadline date for the resolution meeting as 21st December 2005. This document from the government did not provide the name, address and telephone number of the attorney representing the government, although information about plaintiff's attorney's name, address and telephone number was in the possession of the government per the disclosure on the request for a due process Hearing. *See*, Exhibit # 1. Hence, plaintiff's attorney had no way of knowing the name of the government's attorney or contacting same for discussion of the resolution meeting pursuant to *IDEIA, 20 USC 1415 § 615 (f) (1) (B)*. The government's failure to provide the name, address and telephone of their attorney on the **RESOLUTION MEMORANDUM** is purposeful and designed to exclude, omit and remove plaintiff's attorney from participation in the discussions concerning the resolution meeting.

The government never voluntarily served plaintiff's counsel with any legal papers to advise him as to the date and time of the resolution meeting. The government excluded plaintiff's attorney from any and all communications in establishing a date and time for the **RESOLUTION MEETING**, and the acts of the government were purposeful and designed to exclude, omit and remove plaintiff's attorney from participation in the discussions concerning the resolution meeting. Moreover, the government had direct knowledge that plaintiff's attorney would attend the **RESOLUTION MEETING** because notice was provided to the government on plaintiff's request for a due process Hearing. At Exhibit # 1, at page 2 under section "C" plaintiff provides the government expressed notice that her attorney will attend the **RESOLUTION MEETING**. Therefore, the government knew that the attorney for plaintiff would attend, but nevertheless the government failed, refused to serve counsel

for plaintiff with direct notice. Moreover, insofar as plaintiff's counsel did not have the name, address, and telephone number of the government's lawyer, counsel could not appeal to the attorney of record.

Counsel discovered sketchy information about a **RESOLUTION MEETING** date but no time from his client, plaintiff herein. Plaintiff was not even aware that her lawyer did not know the date and time of the **RESOLUTION MEETING**. Whereupon plaintiff's counsel immediately telephoned a Ms. Diesner of the Wilkinson School to discover information about the **RESOLUTION MEETING** and the name of the attorney representing the government. Ms. Diesner was uncooperative in providing specifics and was evasive to counsel's questions for discovery. Whereupon, plaintiff's counsel threatened Ms. Diesner with a law suit to compel her cooperation. Finally, Ms. Diesner faxed plaintiff's counsel a copy of an **unaddressed** letter allegedly provided to his client disclosing the **RESOLUTION MEETING** date and time. *See,* Exhibit # 3. But, Ms. Diesner steadfastly refused to provide plaintiff's counsel the name, address, and telephone number of the government's attorney.

The government met plaintiff concerning other administrative matters on or about 14th December 2005 at the Wilkinson Elementary School, and negotiated a settlement where plaintiff unintelligently settled, terminated, and withdrew her case without the advise of counsel and waived all rights to any and all rights to all benefits sued for in the administrative complaint. *See,* Exhibit # 4. The government met plaintiff without counsel's knowledge, consent, permission, or approval and settled plaintiff's case without the presence of her attorney to advisor her. Plaintiff has very limited education, understanding and knowledge and did not understand her acts. Subsequently, counsel

8

discovered what plaintiff had done, and advised her. On 14th December 2005 counsel

assisted plaintiff in writing a letter to the Wilkinson Elementary School stating that she

did not understand, and that all communications were to go to her attorney, and that the

case would go forward. *See*, Exhibit # 5.

Subsequently, plaintiff's counsel received a telephone call from a Ms.

Diesner informing him that there would be no **RESOLUTION MEETING** because

plaintiff settled the case. Plaintiff's counsel demanded the name of the government's

attorney's, and Ms. Diesner refused. Whereupon, plaintiff's counsel threatened to file a

law suit, and Ms. Diesner hung up the telephone. Immediately, and finally the attorney

representing the government telephoned plaintiff's counsel. The parties worked out a

deal to hold a **RESOLUTION MEETING.** *See*, Exhibit # 6.

On 16th December 2005 plaintiff's counsel received a voice mail from

Manager, and DCPS government attorney Quinne Harris-Lindsey stating that pursuant to

her authority plaintiff's case is being removed from the calendar/docket, and there will be

no **RESOLUTION MEETING** or **DUE PROCESS HEARING**. *See*, Exhibit # 7.

Whereupon, plaintiff immediately filed this action *sub judice*.


IV.    **THE ISSUES:**

(a) THE GOVERNMENT'S REMOVAL, TERMINATION OF
PLAINTIFF'S CASE FROM THE CALENDAR AND DOCKET FROM ANY
ADMINISTRATIVE REVIEW PURSUANT TO THE ***IDEIA, 20 USC 1415 § 615 et
seq.,*** IS A VIOLATION OF DUE PROCESS OF LAW AND A DENIAL OF A FREE
APPROPRIATE PUBLIC EDUCATION WHICH INFLICTS IRREPARABLE INJURY
UPON THE CHILD.

On the 16th December 2005 the government removed and terminated

plaintiff's case from the calendar and docket. The below language is a transcript of the

voice mail of the government official that removed and terminated plaintiff's case from

the calendar and docket for administrative review.

>     **Quinne Harris-Lindsey:** Hi Mr. Howell this is Quinne Harris
>     Lindsey. I am stepping in on a matter, the student's name is Kavon Spencer.
>     I think you had a conversation with Ms. Herbert – also Diesner at Wilkinson.
>     Unfortunately I am going to have to overrule Ms. Herbert's decision and her
>     discussions with you about rescheduling the resolution meeting. We are in
>     possession of a letter written by the parent – my understanding is it was not
>     under duress or at the, at the instruction of the school to withdraw, withdraw
>     this hearing. The only thing, my understanding is the parent came to the
>     school and told Ms. Diesner she did not want to go forward. And as we always
>     do is when a parent comes in and says that we tell them to put it in writing.
>     But other than that we gonna move forward and she put it in writing. So I
>     Know Ms. Diesner and I understand your feelings about the matter however
>     I am unable, we are not going to put this case back on the calendar and
>     actually move it ahead and dismiss. . . . *See*, Exhibit # 7.

The justification for the government's removal and termination of plaintiff's

case from the calendar and docket for administrative review was based on a 14th

December 2005 letter she wrote at the Wilkinson Elementary School while in a meeting

with the government without legal counsel. *See*, Exhibit # 3. Moreover, plaintiff was

walking her minor child to school and ended executing a settlement agreement with the

government without the presence of her attorney when it was never her understanding

that this would compromise her case. Plaintiff has very limited education, experience

and knowledge and she is very young. Hence, she did not comprehend the gravity of her

actions and their legal ramifications. That same day, 14th December 2005, upon being

advised by counsel, plaintiff sent the following letter to the government with the

assistance of legal counsel.

>     "At the school I did not have my lawyer with me when I wrote the December
>     14[th] 2005 letter saying I withdraw my complaint. I did not understand. I
>     want my lawyer to represent me in my case.
>     Please deal with my lawyer. I want my lawyer to represent me on my
>     case. I want my case to go forward. *See*, Exhibit # 5.

The facts are clear that the government has denied plaintiff administrative review and due process of law, and a denial of a free appropriate education which inflicts irreparable harm on KS. *IDEIA, 20 USC 1415 § 615 (f) (1) (A)*, and *see Patsel, et al., v. District of Columbia Board of Education, 522 F.Supp. 535, at p. 537 (D.D.C. 1981)*. In *Patsel, et al., v. District of Columbia Board of Education, supra* federal District Judge Joyce Hens Green held that the plaintiffs had a right to a due process Hearing. Judge Green writes the following in regard to a parent's right to a due process Hearing for a special needs child:

> "The plaintiffs' request to the court is forthright: they ask that defendants provide a "due process" hearing . . . *see*, *Patsel, et al., supra at p. 537*.

Judge Green further held that "the complaint of plaintiffs . . . seeking a due process hearing be and hereby is granted, said hearing to be held by defendants' hearing officer within 5 days from this date in accordance with this memorandum opinion, with a decision by the hearing officer within 5 days thereafter." *See*, *Patsel, et al., supra at p. 541*. The decision of *Patsel, et al., v. District of Columbia Board of Education, surpa* is controlling and analogous to this case *sub judice*. The facts are analogous and the concept of due process of law is identical. In this case at bar, plaintiff sues for an administrative due process Hearing and a TRO. Likewise in *Patsel, et al., supra*, plaintiffs sued for an administrative due process Hearing and a TRO. In *Patsel, et al., supra*, Judge Green granted plaintiffs their right to an administrative due process Hearing. Based on the precedent of *Patsel, et al., v. District of Columbia Board of Education, supra*, this court must grant plaintiff an administrative due process Hearing pursuant to the *IDEIA, 20 USC 1415 § 615 (f) (1) (A)*.

    (b)  THE MINOR CHILD KW HAS SUFFERED IRREPARABLE INJURY AND CONTINUES TO SUFFER IMMEDIATE IRREPARABLE INJURY FROM THE GOVERNMENT'S ONGOING VIOLATIONS OF THE *IDEA, 20 USC 1400 et seq.*, AND *34 C.F.R. PART 300*.

    KS has been identified as a special needs child and receives special education and services pursuant to his Individual Education Program *(IEP)*.  On 24th November 2004 Dr. Carolyn D. Green certified school psychologist performed a psycho-educational assessment on KS and recommended a clinical psychological evaluation and a speech and language screening evaluation in order to address the ongoing disruptive behaviors of KS in school committed against teachers, staff and other children.  In contradiction to Dr. Green's orders and recommendations, an *IEP* was consummated for KS which did not address the important psychological and speech issues and concerns to remedy this child's disruptive behaviors and address his emotional and academic needs to provide *FAPE*.

Furthermore, plaintiff sued at the administrative level to compel the government to conduct a psycho-educational reevaluation pursuant to *34 C.F.R. § 300.536 (b)* to be considered in conjunction with Dr. Green's original orders and recommendations that the psycho-educational, clinical psychological and speech and language screening/evaluation all be current and considered together in executing the *IEP*.

    Although the last psycho-educational assessment was conducted on 24th November 2004, in addition to the logic of Dr. Green's concomitant reasons, the circumstances and conditions in KS' case warranted immediate psycho-educational reevaluation.  Indeed, since the original psycho-educational assessment of approximately a year and one month ago, KS has constantly been is serious trouble with the school

administration concerning his extreme and outrageous behaviors coupled with his academic, social and emotional retrogression.

The remedy of plaintiff's administrative complaint was execution of a clinical psychological evaluation, speech and language screening/evaluation and psycho-educational reevaluation for consideration by a multidisciplinary team *(MDT)* for execution of an appropriate *IEP* to provide *FAPE* pursuant to the *IDEA*.

Therefore, the current *IEP* for this minor child KS does not provide him *FAPE* in view of the government's failure to comply with *34 C.F.R. § 300.532 (g)* and *(j)*; also *see* ***Board of Education of the Hendrick Hudson Central School District v. Rowley, 458 U.S. 176, at pp. 181-182 (1982)***. Wherefore, KS' special education determinations, related services programs and placement articulated in his *IEP* are all invalid, defective and inappropriate, in turn KS has suffered irreparable injury and will continue to suffer irreparable injury to his young emotional well being, special educational advancement while realizing substantial overall set backs socially and academically. In view of the foregoing it is necessary and proper to respect plaintiff's federal due process rights and provide an administrative due process Hearing before an impartial Hearing Officer.

(c) THE GOVERNMENT HAS VIOLATED THE ATTORNEY-CLIENT RELATIONSHIP BY FAILING TO PROVIDE THE PLAINTIFF'S ATTORNEY APPROPRIATE NOTICE.

On 6th December 2005 plaintiff's counsel filed a request for a due process Hearing with the government and disclosed his full name, address, telephone number and bar identification, in order to allow the opposition attorney for the government to have

full notice and the ability to contact him.

On the 9th December 2005 plaintiff's attorney received a **SCHEDULING MEMORANDUM** from the government. *See,* Exhibit # 2. This **SCHEDULING MEMORANDUM** stated the deadline date for the resolution meeting as 21st December 2005. This document from the government did not provide the name, address and telephone number of the attorney representing the government, although information about plaintiff's attorney's name, address and telephone number was in the possession of the government per the disclosure on the request for a due process Hearing. *See,* Exhibit # 1. Hence, plaintiff's attorney had no way of knowing the name of the government's attorney or contacting same for discussion of the resolution meeting pursuant to *IDEIA, 20 USC 1415 § 615 (f) (1) (B).* The government's failure to provide the name, address and telephone of their attorney on the **RESOLUTION MEMORANDUM** was purposeful and designed to exclude, omit and remove plaintiff's attorney from participation in the discussions concerning the resolution meeting. This action of the government is a violation of the attorney-client relationship between plaintiff and her attorney, insofar as it was by design to prevent notice to plaintiff's counsel. *See, Bell v. Brown, 557 F.2d 849, at p. 850[2] (D.C. Cir. 1977).*

> Notice is not imputed to client unless it comes to attorney within the
> duration and scope of the attorney-client relationship. *Bell v. Brown,*
> *supra, at p. 850.*

The government never voluntarily served plaintiff's counsel with any legal papers to advise him as to the date and time of the resolution meeting. In regard to the concept of notice to a party's attorney, *Orius Telecommunications, Inc. v. DC DOES, 857 A.2d 1061 at p. 1069 (D.C. 2004)* held:

---

[2] *See,* headnote 4 on Attorney and Client.

Notice of a civil or administrative action by a board or commission given to the counsel of a party is considered notice to the party.

The government excluded plaintiff's attorney from any and all communications in establishing a date and time for the **RESOLUTION MEETING**, and the acts of the government were purposeful and designed to exclude, omit and remove plaintiff's attorney from participation in the discussions concerning the resolution meeting. As a matter of law plaintiff has a right to her counsel's representation and advice at all stages of administrative proceedings. *See*, *Securities And Exchange Commission v. Whitman, 613 F.Supp. 48, at p. 49 (D.C.D.C. 1985)*. In *Securities And Exchange Commission v. Whitman, supra at p. 49* federal Judge Joyce Hens Green held that a party has the right to his counsel's representation and advice at an administrative proceeding. Likewise, in the case at bar plaintiff had a right to her counsel's representation and advice at all phases of the administrative process and she did not receive that representation.

Moreover, the government had direct knowledge that plaintiff's attorney would attend the **RESOLUTION MEETING** because notice was provided to the government on plaintiff's request for a due process Hearing. At Exhibit # 1, at page 2 under section "C" plaintiff provides the government expressed notice that her attorney will attend the **RESOLUTION MEETING**. Therefore, the government knew that the attorney for plaintiff would attend, but nevertheless the government failed, refused to serve counsel for plaintiff with direct notice. Moreover, insofar as plaintiff's counsel did not have the name, address, and telephone number of the government's lawyer, counsel

15

could not appeal to the attorney of record.

Counsel discovered sketchy information about a **RESOLUTION MEETING** date but no meeting time from his client, plaintiff herein. Plaintiff was not aware that her lawyer did not know the date and time of the **RESOLUTION MEETING**. Whereupon plaintiff's counsel immediately telephoned a Ms. Diesner of the Wilkinson School to discover information about the **RESOLUTION MEETING** and the name of the attorney representing the government. Ms. Diesner was uncooperative in providing specifics and was evasive to counsel's questions for discovery. Whereupon, plaintiff's counsel threatened Ms. Diesner with a law suit to compel her cooperation. Finally, Ms. Diesner faxed plaintiff's counsel a copy of an **<u>unaddressed</u>** letter allegedly provided to his client disclosing the **RESOLUTION MEETING** date and time. But, Ms. Diesner steadfastly refused to provide plaintiff's counsel the name, address, and telephone number of the government's attorney.

The government met plaintiff concerning other administrative matters on or about 14th December 2005 at the Wilkinson Elementary School, and negotiated a settlement where plaintiff unintelligently settled, terminated, and withdrew her case without the advice of counsel and waived all rights to any and all benefits sued for in the administrative complaint. *See*, Exhibit # 4. The government met plaintiff without counsel's knowledge, consent, permission, or approval and settled plaintiff's case without the presence of her attorney to advise her. Plaintiff has very limited education, understanding and knowledge and did not understand her acts. Subsequently, counsel discovered what plaintiff had done, and advised her. On 14th December 2005 counsel assisted plaintiff in writing a letter to the Wilkinson Elementary School stating that she

did not understand, and that all communications were to go to her attorney, and that the case would go forward. *See*, Exhibit # 5.

Subsequently, plaintiff's counsel received a telephone call from a Ms. Diesner informing him that there would be no **RESOLUTION MEETING** because plaintiff settled the case. Plaintiff's counsel demanded the name of the government's attorney's, and Ms. Diesner refused. Whereupon, plaintiff's counsel threatened to file a law suit, and Ms. Diesner hung up the telephone. Immediately, and finally the attorney representing the government telephoned plaintiff's counsel. The parties worked out a deal to hold a **RESOLUTION MEETING.** *See*, Exhibit # 6.

On 16th December 2005 plaintiff's counsel received a voice mail from Manager, and DCPS government attorney Quinne Harris-Lindsey stating that pursuant to her authority plaintiff's case is being removed from the calendar/docket, and there will be no **RESOLUTION MEETING** or **DUE PROCESS HEARING**. *See*, Exhibit # 7. These governmental action violated the attorney-client relationship between plaintiff and her attorney.

(d) THE DEFENDANT QUINNE HARRIS-LINDSEY IS THE MANAGER FOR PAYING AND APPROVING ATTORNEY'S *IDEA* VOUCHERS FOR THE GOVERNMENT AND IS SIMULTANEOUSLY LITIGATING THIS CASE AGAINST PLAINTIFF'S COUNSEL. THIS IS AN OBVIOUS CONFLICT OF INTEREST WHICH HAS A "CHILLING EFFECT" ON PLAINTIFF'S COUNSEL.

Defendant Quinne Harris-Lindsey is the manager for paying and approving attorneys' *IDEA* vouchers. *See*, Exhibit # 8. Defendant Quinne Harris-Lindsey is also now the attorney and government supervisor to deny Plaintiff a due process Hearing by removal of her case off the docket and calendar. *See*, Exhibit # 7. In the case at bar, Quinne Harris-Lindsey holds two governmental functions. The question of

17

incompatibility relating to holding of more than one governmental office must be examined on a case-by-case basis. *See*, ***Citizens Ass'n v. District of Columbia Alcoholic Beverage Control Board, 359 A.2d 295, at p. 298 (D.C. 1976).*** The tone of the transcript in Exhibit # 7 illustrates defendant Quinne Harris-Lindsey as an over-zealous advocate advancing the interests of her governmental clients. On the other hand analytical analysis of Exhibit # 8 illustrates Quinn Harris-Lindsey as the "paymaster" with omnipotent powers to reject or approve ***IDEA*** vouchers to attorneys. This is an obvious and natural conflict of interest. To litigate against the government Manager who is the "paymaster" that approves or denies your ***IDEA*** vouchers has a "chilling effect" on the attorney. The governmental action of placing the "paymaster" of attorneys' fees in direct litigation against the very attorney she approves vouchers for has a "chilling effect". Here in the case at bar, the "chilling impact" arises from the present and future exercise, and threatened exercise of coercive power. *See*, ***Reports Committee For Freedom of the Press, et al., v. American Telephone & Telegraph et al., 593 F2d 1030, at p. 1052 (D.C. Cir. 1978)***.

Insofar as it is an obvious and legal conflict of interest for defendant Quinn Harris-Lindsey to approve plaintiff's ***IDEA*** vouchers while simultaneously zealously litigating this case ***sub judice***, defendant Quinn Harris-Lindsey must be immediately removed from her second governmental role of payment of ***IDEA*** vouchers.

## V.    ARGUMENT FOR INJUNCTIVE RELIEF

In order to grant injunctive relief,[3] a court traditionally must find that the moving party meets four elements:  (1)  there is a likelihood of success on the merits;  (2) irreparable harm to the movant;  (3)  an injunction would not substantially harm the rights of the defendants;  and (4)  an injunction would be in the public interest or at least not adverse to the public interest.  *See e.g.,  Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841, 842-844 (D.C. Cir. 1977)*;  *Adams v. Vance, 570 F.2d 950 (D.C. Cir. 1977)*;  *Sea Containers Ltd v. Stena AB, 890 F.2d 1205, 1208 (D.C. Cir. 1989)*.  Under *Holiday Tours, supra*, the factors must be viewed as a continuum of one factor compensating for less of another.  The necessary level or degree of likelihood of success will vary according to the court's assessment of the other factors; when the other three factors strongly favor interim relief, a court may grant injunctive relief when the movant has merely made out a "substantial" case on the merits. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d at p. 843*.

In the case of a violation of a federal statute, however, "a court need not inquire into the traditional requirements for equitable relief." *Community Nutrition Institute v. Butz, 420 F.Supp 751, 753-754 (D.C.D.C. 1976)*.  This doctrine was established over fifty years ago by the Supreme Court:

> [W]e are satisfied that this new case does not call for a balancing of equities or for the invocation of the generalities of judicial maxims in order to determine whether an injunction should have issued.  The equitable doctrines

---

[3] Plaintiffs have complied with LCvR 65.1 (a) by filing an appropriate certificate that defendants *sub judice* have been served by hand a copy of this TRO proceeding, therefore, the question of *ex parte* application for TRO is moot.

relied on do not militate against the capacity of a court of equity as a proper forum in which to make a declared policy of Congress effective. ***United States v. San Francisco, 310 U.S. 16, p. 30-31 (1940)***.[4]

As demonstrated above, the government's actions (or inactions) to date constitute a gross violation of plaintiff's right to a due process Hearing and a free appropriate education via federal statute, federal common law and federal regulations. Thus, this court should grant the relief sought by plaintiffs at this point without further showing. However, if the court is inclined to consider the traditional requirements for injunctive relief, it will find that they have been satisfied as well.

First , plaintiff has demonstrated a substantial likelihood she will prevail on the merits. The ***IDEIA, 20 USC 1415 § 615 (f) (1) (A)*** mandates a due process Hearing. Next, the ***IDEA, 1400 et seq.*** and ***34 C.F.R. Part 300*** guarantee plaintiff (*i.e.* KS) a free appropriate education, while ***§ 504 of the Rehabilitation Act*** and the ***ADA, 42 USC 12101 et seq.,*** likewise protect plaintiff's rights. Finally, ***42 USC 1983*** provides plaintiff federal rights *sub judice*. ***Hunt v. Bartman, supra at p. 245***. Plaintiff's success on the merits is a virtual certainty.

Second, and most importantly, it is readily apparent that plaintiff will suffer irreparable harm if injunctive relief is not granted. As aforementioned, KS has been identified as a special needs child and receives special education and services pursuant to his Individual Education Program *(IEP)*. On 24th November 2004 Dr. Carolyn D. Green certified school psychologist performed a psycho-educational assessment on KS and recommended a clinical psychological evaluation and a speech and language screening evaluation in order to address the ongoing disruptive behaviors of KS in school

---

[4] *See also,* ***Tennessee Valley Authority v. Hill, 437 U.S. 153, 193-194 (1978)***; ***Securities Industry Ass'n v. Board of Governors, 628 F.Supp. 1438, 1443 (D.C. D.C. 1986)***; ***National Wildlife Federation v. Andrus, 490 F.Supp 1245, 1256 (D.C. D.C. 1977)***.

committed against teachers, staff and other children. In contradiction to Dr. Green's orders and recommendations an *IEP* was consummated for KS which did not address the important psychological and speech issues and concerns to remedy this child's disruptive behaviors and address his emotional and academic needs to provide *FAPE*.

Furthermore, plaintiff sued at the administrative level to compel the government to conduct a psycho-educational reevaluation pursuant to *34 C.F.R. § 300.536 (b)* to be considered in conjunction with Dr. Green's original orders and recommendations that the psycho-educational, clinical psychological and speech and language screening/evaluation all be current and considered together in executing the *IEP*.

Although the last psycho-educational assessment was conducted on 24th November 2004, in addition to the logic of Dr. Green's concomitant reasons, the circumstances and conditions in KS' case warranted immediate psycho-educational reevaluation. Indeed, since the original psycho-educational assessment of approximately a year and one month ago, KS has constantly been in serious trouble with the school administration concerning his extreme and outrageous behaviors coupled with his academic, social and emotional retrogression.

The remedy of plaintiff's administrative complaint was execution of a clinical psychological evaluation, speech and language screening/evaluation and psycho-educational reevaluation for consideration by a multidisciplinary team *(MDT)* for execution of an appropriate *IEP* to provide *FAPE* pursuant to the *IDEA*.

Therefore, the current *IEP* for this minor child KS does not provide him *FAPE* in view of the government's failure to comply with *34 C.F.R. § 300.532 (g)* and

*(j)*;  also *see **Board of Education of the Hendrick Hudson Central School District v. Rowley, 458 U.S. 176, at pp. 181-182 (1982)***.  Wherefore, KS' special education determinations, related services programs and placement articulated in his ***IEP*** are all invalid, defective and inappropriate, in turn KS has suffered irreparable injury and will continue to suffer irreparable injury to his young emotional well being, special educational advancement while realizing substantial overall set backs socially and academically.  In view of the foregoing it is necessary and proper to respect plaintiff's federal due process rights and provide an order for an **immediate** administrative due process Hearing before an impartial Hearing Officer.

Indeed, as the court recognized in ***Cox v. Brown, 498 F.Supp. 823, 829 (D.C.D.C. 1980)***, "absent injunctive relief, [plaintiffs] will suffer irreparable harm lacking each day of their young lives an appropriate education, one that is sensitive to their particular disabilities, commensurate to their levels of understanding, and fulfilling of their immediate needs."  Hence, the longer this small child is denied a due process Hearing from the government in order to comply with federal laws and regulations, the more this small child will suffer irreparable injury and the more difficult it will be to mitigate the damages.

The third prong of the traditional test for injunctive relief is harm to the defendant, the District government.  Here, *sub judice,* there can be no harm in granting relief that simply requires the government to meet their undisputed legal obligations and provide plaintiff a due process Hearing which will guarantee KS a free appropriate public education pursuant to federal law.

Finally, a grant of injunctive relief in this case is in the public interest.  The

public interest clearly is served by ensuring that officials of the government are consistently within the law in providing students with disabilities a free, appropriate public education. Conversely, no public interest is served by permitting the government to act (or to refuse to act) in utter disregard of plaintiff's federal and constitutional rights. Therefore, the public's interest is entirely consistent with plaintiffs' interest in this matter.

### VI.    *IDEA* DOES NOT REQUIRE BOND OR SURETY

LCvR 65.1.1 requires any bond or surety question in a TRO matter to be set by court order or by consent of the parties. The circumstances and law in this *IDEA* case do **not** require, or warrant, the posting of a bond or surety. LCvR 67,1. Moreover, as noted above, the government will suffer no substantial harm whatsoever where injunctive relief is granted in this case. Furthermore, plaintiff has a substantial likelihood of success and very limited income as an inner-city S.E. Washington, D.C. resident, thus a bond or surety would serve no legal purpose, or public interest, but to deny plaintiff and KS the necessary and proper relief prayed for herein.

### VII.    CONCLUSION

Absent immediate injunctive relief prayed for in plaintiff's motion, this small child with disabilities for whom the government is required by law to provide due process of law and a free appropriate public education will suffer irreparable injury and be deprived of that education. The time and learning opportunities lost cannot be regained. The loss, in itself, constitutes irreparable harm. The determinations, evaluations, services, placements to meet this little child's special educational rights are currently being violated by the government, and each and every day the child is denied a due

process Hearing further harm is inflicted. Wherefore, injunction relief is both warranted

and essential. Therefore, plaintiff prays that this honorable court will grant this TRO or

alternatively grant a Preliminary Injunction against the District of Columbia Government.

Consequently, plaintiff moves for immediate equitable relief against the government.

Respectfully submitted,

Roy Carleton Howell, No. 415142
8003 Parkside Lane, N.W.
Washington, D.C. 20012
Home Phone (202) 545-0750
Office Phone (202) 545-0755

Attorney for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

SHADONNA SPENCER,
Parent and Next Friend of K. S.

        Plaintiffs


      v.                         Civil Action No. _____
                                   JUDGE: _____

DISTRICT OF COLUMBIA, _et al,_.

        Defendants.

_____

# _PLAINTIFF'S EXHIBIT NUMBER ONE_

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**



# Due Process Complaint Notice

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.  INFORMATION ABOUT THE STUDENT:

Student Name: <u>SPENCER, KAVON</u>          Birth Date: <u>09/25/98</u>

Address: <u>7 Elmira Street, S.E., Apartment # 4, Washington, D.C. 20032</u>

Home School: <u>Wilkinson Elementary School</u>

Present School of Attendance: <u>Wilkinson Elementary School</u>

    Is this a charter school? <u>No</u>          (If yes, you must also provide a copy of this notice to the charter school principal or director)

Parent/Guardian of the Student: <u>Ms. Shadonna Spencer</u>

Address (if different from the student's above): _____

Phone/Contact Number: _____  Fax Number (if applicable): _____
**\*Contact Ms. Spencer's attorney Mr. Howell @ (202) 545-0755**

SEID DPCN Rev'd. 7/12/05

**B.** **Individual Making the Complaint/Request for Due Process Hearing:**

Name: Ms. Shadonna Spencer via her Attorney (Mr. Howell)

Complete Address: 7 Elmira Street, S.E., Apartment # 4, Washington, DC 20032

(contact Ms. Spencer via her attorney, Mr. Howell @ (202) 545-0750 and

fax # (202) 545-0525)

Phone: (h) _____ (w) _____ (Fax) _____ (e-mail) _____

Relationship to the Student:

[✓] Parent     [ ] Legal Guardian     [ ] Parent Surrogate

[ ] Self/Student     [ ] Local Education Agency (LEA)     [ ] Parent Advocate

**C.** **Legal Representative/Attorney (if applicable):**

Name: Attorney Roy Carleton Howell, B.S., J.D., LL.M.

Address: 8003 Parkside Lane, N.W.

Washington, D.C. 20012

Phone: (w) (202) 545-0755   (Fax) (202) 545-0755   (e-mail) professorhowell1954@yahoo.com

Will attorney / legal representative attend the resolution session? [✓] Yes   [ ] No

I waive the resolution meeting. If compelled I'll have counsel.

**D.** **Complaint Made Against (check all that apply):**

[✓] DCPS school (name of the school if different from page one) _____

[ ] Charter school (name of the charter school if different from page one) _____

[ ] Non-public school or residential treatment facility (name) _____

[ ] Parent

**E.** **Resolution Session Meeting Between Parent and LEA:**

I understand that it is my right to have a resolution meeting to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution meeting to avoid having this meeting.)

[✓] I wish to waive the Resolution Session Meeting

**F.** **Mediation Process:** WE REQUEST A DUE PROCESS HEARING!

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

[✓] I DO NOT WANT MEDIATION

[ ] I am requesting mediation as an alternative to the resolution session meeting.

[ ] I am requesting mediation and a due process hearing.

[ ] I am requesting mediation **only** at this time.

SFD DPCN Rev'd 7/12/05

## G.    Facts and Reasons for the Complaint:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions.  Provide complete details about all the facts supporting your claims.  (You may attach additional pages if needed):

1.    What is the nature of the problem, including the facts relating to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

For the nature of the problems and cogent facts that will need to be addressed at a DUE PROCESS HEARING see the attached seven page Memorandum.  Also, see Petitioner's Exhibits number 1 and 2.

2.    To the extent known to you at this time, how can this problem be resolved?

For a discussion of the Remedies to be granted in an HOD please see the attached seven page Memorandum, and Petitioner's Exhibits 1 and 2.

3.    Issues presented:

For analytical discussion and citation of each issue please see the attached seven page Memorandum.

## H.    Accommodations and Assistance Needed:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)_____
- Special Communication (please describe the type)_____
- Special Accommodations for Disability (please be specific) _____
- Other _____

3

**I.** <u>**Waiver of Procedural Safeguards:**</u>

☑ I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

**J.** <u>**Parent Signature and Affirmation:**</u>

I affirm that the information provided on this form is true and correct.

x _Shadonna Spencer_ ___ 12/6/05

Signature of Parent or Guardian                Date

**K.** <u>**Signature of Attorney/ Legal Representative:**</u>

_[signature]_ ___ 6th December 2005

Legal Representative / Advocate                Date

**L.** <u>**Signature of LEA Representative (if hearing requested by LEA):**</u>

_____ ___ _____

Representative of LEA                Date

**Mail, fax or deliver this complaint notice to:**<br>
**State Enforcement and Investigation Division**<br>
**For Special Education Programs (SEID)**<br>
**Student Hearing Office (SHO)**<br>
**825 North Capitol Street, NE, 8th Floor**<br>
**Washington, DC 20002**<br>
**Fax number: 202/442-5556**

4

*In the Matter of: Kavon Spencer     Date of Birth: 09/25/98*

## G.   FACTS AND REASONS FOR THE COMPLAINT

1.     The nature of the problem with disclosure of the facts for a **DUE PROCESS**

**HEARING** are the following:

**ISSUE 1:**

 The District of Columbia Public Schools (DCPS) violated *34 C.F.R. § 300.532 (g)*

and *(j)* for failure to conduct a Clinical Psychological Evaluation.

**FACTS:**

 On 24th November 2004 Dr. Carolyn D. Green, certified school psychologist

performed a Psycho-Educational Assessment of this child and made specific

recommendations.  Dr. Green ordered /recommended that a Clinical Psychological

Evaluation be performed on this child.  It is therefore necessary and proper to perform a

Clinical Psychological Evaluation on this child per the professional recommendation of

Dr. Carolyn D. Green pursuant to *34 C.F.R. § 300.532 (g)* and *(j)*.

**REMEDY:**

 Per the order/recommendation of Dr. Carolyn D. Green a Clinical Psychological

Evaluation must be performed upon this child.  Pursuant to *5 DCMR § 3021.20-OFFICE*

*OF THE SUPERINTENDENT DIRECTIVE NUMBER 520.6* petitioner moves for

DCPS to pay Kingsbury Center, or Children's National Medical Center or any other

approved independent service provider to execute the Clinical Psychological Evaluation. .

**ISSUE 2:**

 DCPS violated *34 C.F.R. § 300.532 (g)* and *(j)* for failure to conduct a Speech and

Language Screening/Evaluation.

**FACTS:**

 On 24th November 2004 Dr. Carolyn D. Green, certified school psychologist

1

performed a Psycho-Educational Assessment on this child and made specific

recommendations.  Dr. Green ordered/recommended that a Speech and Language

Screening/Evaluation be performed on this child.  It is therefore necessary and proper to

perform a Speech and Language Screening/Evaluation on this child per the professional

recommendation of Dr. Carolyn D. Green pursuant to *34 C.F.R. § 300.532 (g)* and *(j)*.

**REMEDY:**

Per the order/recommendation of Dr. Carolyn D. Green a Speech and Language

Screening/Evaluation must be performed upon this child. Pursuant to *5 DCMR §*

*3021.20-OFFICE OF THE SUPERINTENDENT DIRECTIVE NUMBER 520.6*

petitioner moves for DCPS to pay Kingsbury Center, or Children's National Medical

Center or any other approved independent service provider to execute the Speech and

Language Screening/Evaluation.


**ISSUE 3:**

The circumstance in this case warrant Psycho-Educational Reevaluation pursuant to

*34 C.F.R. § 300.536 (b)* based on the child's ongoing disruptive behaviors in school

which have been extraordinarily disrespectful to school staff, teachers, and students.

**FACTS:**

Although the last Psycho-Educational Assessment was conducted on 24th November

2004, the circumstances and conditions in this case warrant an immediate Psycho-

Educational Reevaluation.  Since the Psycho-Educational Assessment of approximately a

year and one month ago, this child has constantly been in serious trouble with the school

administration concerning his extreme and outrageous behaviors.  Thus, the

circumstances warrant reevaluation pursuant to *34 C.F.R. § 300.536 (b)*.  Petitioner has

been to numerous meetings with school officials in regard to her son's extreme

emotionally disruptive behaviors.  During these ongoing numerous meetings Petitioner

has asked for additional "help" with controlling her son's "very high impulses."  Indeed,

much has changed with the status of this child since the 24th November 2004 Psycho-

Educational Assessment.  Thus, Petitioner's requests for reevaluation must be granted

pursuant to *34 C.F.R. § 300.536 (b)*.

**REMEDY:**

    Per *34 C.F.R. § 300.536 (b)* a Psycho-Educational Reevaluation is warranted by

conditions and circumstances of this case.  Moreover, said reevaluation must be granted

in view of Petitioner's requests.  Pursuant to *5 DCMR § 3021.20-OFFICE OF THE*

*SUPERINTENDENT DIRECTIVE NUMBER 520.6* petitioner moves for DCPS to pay

Kingsbury Center, or Children's National Medical Center, or any other approved

independent service provider to execute a Psycho-Educational Reevaluation.


**ISSUE 4:**

    DCPS violated *34 C.F.R. § 300.346 (b)* and *34 C.F.R. § 300.346 (a) (1) (ii)* for failure

to follow Dr. Carolyn D. Green's orders/recommendations for execution of additional

evaluations and assessments for *IEP* consideration.

**FACTS:**

    On 24th November 2004 Dr. Carolyn D. Green, certified school psychologist

performed a Psycho-Educational Assessment on this child and recommended/ordered a

Clinical Psychological Evaluation and a Speech and Language Screening/Evaluation.

Subsequently on 1st February 2005 DCPS executed an *IEP* in total disregard of

performing the crucial evaluations and assessments as recommended/ordered by Dr.

Carolyn D. Smith, certified school psychologist.  Therefore, the 1st February 2005 *IEP* is

defective and denies this child *FAPE* in violation of the *IDEA*.  *34 C.F.R. § 300.346 (b)*

*and 34 C.F.R. § 300.346 (a) (1) (ii).* The MDT did not follow the

orders/recommendations of Dr. Carolyn D. Smith, certified school psychologist. The

current *IEP* is not addressing the child's needs, in turn the child is extraordinarily

disruptive, disrespectful, and uncontrollable in school.

**REMEDY:**
   DCPS must immediately comply with the 24th November 2004

orders/recommendations of Dr. Carolyn D. Green and execute a Clinical Psychological

Evaluation, and a Speech and Language Screening/Evaluation. Next, DCPS must

execute a Psycho-Educational Reevaluation because conditions indeed warrant this, and

secondly Petitioner requests same. Next, DCPS must consider the results of the

aforementioned evaluations and assessments, and then execute an *IEP* in compliance

with *34 C.F.R. § 300.346 (b) and 34 C.F.R. § 300.346 (a) (1)(ii)* thus following the

orders/recommendations of Dr. Carolyn D. Green, certified school psychologist.


**ISSUE 5:**
   DCPS violated *34 C.F.R. § 300.552 et seq.,* insofar as there was not sufficient

evaluation and assessment data pursuant to the professional orders/recommendations of

Dr. Carolyn D. Green for the MDT to execute an appropriate and knowledgeable

placement of this child.

**FACTS:**
   DCPS' failure to comply with the professional orders/recommendations of Dr.

Carolyn D. Green and execute a Clinical Psychological Evaluation, and a Speech and

Language Screening/Evaluation denied this child *FAPE* pursuant to the *IDEA* in regard

to appropriate placement pursuant to *34 C.F.R. § 300.552 et seq.,* insofar as there was no

sufficient evaluation and assessment data to execute appropriate placement.

4

**REMEDY:**
  DCPS must immediately comply with the 24th November 2004 orders/recommendations of Dr. Carolyn D. Green and execute a Clinical Psychological Evaluation, and a Speech and Language Screening/Evaluation. Moreover, pursuant to *34 C.F.R. § 300.536 (b)* as aforementioned in **ISSUE 3** Psycho-Educational Reevaluation is warranted by conditions and justified via Petitioner's requests. DCPS must marshal the evidence and findings from these evaluations, assessments and reevaluation and provide the aforementioned data to a MDT for consideration of appropriate placement pursuant to *34 C.F.R. § 300.552, et seq.* No doubt whatsoever Dr. Carolyn D. Green wanted the aforementioned data for the MDT to analyze, consider and acknowledge for consummation of an informed placement decision to provide this child *FAPE.*

**ISSUE 6:**
  The 23rd March 2005 *IEP* denied this child *FAPE* in violation of the *IDEA* for failure to provide this child with *ESY* insofar as the objective evidence illustrates that this child has experience regression. Pursuant to **ISSUE 3** this child has committed ongoing disruptive behaviors in school which have been extraordinarily disrespectful to school staff, teachers, and students. Moreover, this child has fallen further behind academically.

**FACTS:**
  The evidence is clear that this child requires *ESY* in order to realize *FAPE* pursuant to the *IDEA.* Moreover, the additional evaluations and assessments as ordered by Dr. Carolyn D. Green, with the concomitant Psycho-Educational Reevaluation, will further justify the need for *ESY* for this child.

**REMEDY:**
  DCPS must immediately comply with the 24th November 2004 orders/recommendations of Dr. Carolyn D. Green and provide this child *ESY* in order to

5

prevent this child's further regressions.  *See, Alamo Heights School District v. State Board of Education, 1985-86 EHLR 557:318 (5th Cir. 1986).*

## ISSUE 7:
DCPS as a matter of law must provide this child with compensatory education for all the aforementioned violations of the *IDEA* which denied this child *FAPE*.

## FACTS:
The evidence is clear that DCPS has violated the *IDEA* and denied this child *FAPE* based upon the aforementioned facts and legal arguments.

## REMEDY:
DCPS must immediately provide this child with compensatory education pursuant to *Burlington School Committee v. Massachusetts Department of Education,471 U.S. 359 (1985).*  As a matter of law, compensatory education is an appropriate remedy when a student has been denied *FAPE* in the past as in the case at bar.

## PETITIONER'S EVIDENCE AND BURDEN OF PROOF:
Pursuant to *Schaffer, et al., v. Weast, Superintendent, Montgomery County Public Schools, et al., 546 U.S. ___ (November 2005)*, petitioner submits a 24th November 2004 Psycho-Education Assessment and a 8th November 2005 "school discipline complaint" to meet their burden of persuasion.  *See, Exhibits # 1 and 2.*  Therefore, pursuant to *5 DCMR 3030.3* the burden of proof is now on DCPS to show their actions were adequate to meet this child's educational needs.

**DEMAND FOR HEARING:**

It is necessary and proper to have a **DUE PROCESS HEARING** and have an *HOD*

executed in this case in compliance with the law.

Respectfully submitted,

Roy Carleton Howell, BS, JD, LL.M.
8003 Parkside Lane, NW
Washington, D.C. 20012
Phone # (202) 545-0525
Home # (202) 545-0750
Fax # (202) 545-0755

# *BEFORE DCPS STUDENT HEARING OFFICE*

# *IN THE MATTER OF KAVON SPENCER*

# *PETITION FOR HEARING*

# *<u>EXHIBIT NUMBER ONE</u>*



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

Office of Special Education
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

PSYCHO-EDUCATIONAL ASSESSMENT

SPENCER, KAVON

DATE OF BIRTH  9/25/98
DATE OF REPORT 11/24 /04
EXAMINER        Carolyn D. Green
                Certified School Psychologist
TESTS ADMINISTERED

Wechsler Intelligence Scale for Children-Fourth Edition
Woodcock-Johnson III  Tests of Achievement
Developmental Test of Visual-Motor Integration
Human Figure Drawing
Incomplete Sentences
Record Review
Teacher Interview

REASON FOR REFFERAL/PERTINENT BACKGROUND INFORMATION

Kavon was referred for an evaluation to determine his current
levels of functioning in order to make an appropriate determination
regarding his need for special educational programming. Kavon has
a school history of grade retention, and academic delays in reading
and mathematics. Reportedly, Kavon was diagnosed with Attention
Deficit Disorder at age five. He is currently enrolled at Wilkinson
Elementary School in the first grade.


BEHAVIORAL OBSERVATIONS

Kavon was emotionally responsive to the demands of the testing
process. He displayed a variable attention span, engaging in
playful behavior. Examiner assistance was needed at times to have
him refocus on tasks.  Kavon displayed long response latencies and
needed prodding. He followed directions after sometimes needing
repetition of standardized instructions. Kavon appeared somewhat
insecure in his strengths and weaknesses, responding meekly to test
items. Results are thought to be a reliable estimate of his current
academic ability levels.

# WISC-IV Interpretive Report

| | | | |
|---|---|---|---|
| EXAMINEE: | KAVON SPENCER | REPORT DATE: | 11/24/04 |
| AGE: | 6 years 1 month | | |
| DATE OF BIRTH: | 9/25/98 | EXAMINER: | CAROLYN GREEN |

Tests Administered:  WISC-IV (11/24/04)       Age at Testing:  WISC-IV (6 years 1 months)

## SCORES SUMMARY

| WISC-IV COMPOSITE | SCORE |
|---|---|
| Verbal Comprehension Index (VCI) | 71 |
| Perceptual Reasoning Index (PRI) | 75 |
| Working Memory Index (WMI) | 62 |
| Processing Speed Index (PSI) | 100 |
| Full Scale IQ (FSIQ) | 71 |

## Interpretation of WISC-IV Results

KAVON was administered ten subtests of the Wechsler Intelligence Scale for Children – Fourth Edition (WISC-IV) from which his composite scores are derived. The Full Scale IQ (FSIQ) is derived from a combination of ten subtest scores and is considered the most representative estimate of global intellectual functioning. KAVON's general cognitive ability is within the Borderline range of intellectual functioning, as measured by the FSIQ. His overall thinking and reasoning abilities exceed those of approximately 3% of children his age (FSIQ = 71; 95% confidence interval = 67-77). KAVON may experience difficulty in keeping up with his peers in a wide variety of situations that require age-appropriate thinking and reasoning abilities. His ability to think with words is comparable to his ability to reason without the use of words. Both KAVON's verbal and nonverbal reasoning abilities are in the Borderline range.

KAVON's verbal reasoning abilities as measured by the Verbal Comprehension Index are in the Borderline range and above those of only 3% of his peers (VCI = 71; 95% confidence interval = 66-80). The Verbal Comprehension Index is designed to measure verbal reasoning and concept formation. KAVON performance on the verbal subtests presents a diverse set of verbal abilities, performing much better on some verbal skills than others. The degree of variability is unusual for a child his age and may be noticeable to adults who know him well.

KAVON's nonverbal reasoning abilities as measured by the Perceptual Reasoning Index are in the Borderline range and above those of only 5% of his peers (PRI = 75;  95% confidence interval = 69-85). The Perceptual Reasoning Index is designed to measure fluid reasoning in the perceptual domain with tasks that primarily assess nonverbal fluid reasoning and perceptual organization abilities. KAVON's performance on the perceptual reasoning subtests contributing to the PRI is somewhat

variable, although the magnitude of this difference in performance is not unusual among children his age.
Examination of KAVON's performance on individual subtests provides additional information regarding
his specific nonverbal abilities.

KAVON's ability to sustain attention, concentrate, and exert mental control is in the Extremely Low
range. He performed better than approximately 1% of his age-mates in this area (Working Memory
Index = 62; 95% confidence interval 57-73).

KAVON's ability in processing simple or routine visual material without making errors is in the Average
range when compared to his peers. He performed better than approximately 50% of his peers on the
processing speed tasks (Processing Speed Index = 100; 95% confidence interval 91-109). Processing
visual material quickly is an ability that KAVON performs well as compared to his verbal and nonverbal
reasoning ability. Processing speed is an indication of the rapidity with which KAVON can mentally
process simple or routine information without making errors. Students with very low reasoning abilities
often tend to do somewhat better on these processing speed tasks. This may have practical implications
for vocational programs in which successful adjustment depends upon quick and relatively error-free
performance of simple tasks.

**Personal Strengths and Weakness**
KAVON achieved his weakest performance among the verbal reasoning tasks on the Comprehension
subtest. His weak performance on the Comprehension subtest was far below those of most of his
peers. The Comprehension subtest required KAVON to provide oral solutions to everyday problems
and to explain the underlying reasons for certain social rules or concepts. This subtest provides a
general measure of verbal reasoning. In particular, this subtest assesses his comprehension of social
situations and social judgment as well as his knowledge of conventional standards of social behavior;
(Comprehension scaled score = 2).

KAVON achieved his best performance among the nonverbal reasoning tasks on the Picture Concepts
subtest and lowest score on the Block Design subtest. His performance across these areas differs
significantly, suggesting that these are the areas of most pronounced strength and weakness,
respectively, in KAVON's profile of nonverbal reasoning abilities. His weak performance on the Block
Design subtest was below that of most children his age. On the Picture Concepts subtest, KAVON
was presented with two or three rows of easily identifiable pictures and asked to choose one picture
from each row to form a group with a common characteristic. This subtest is designed to measure fluid
reasoning and abstract categorical reasoning ability. The task invokes verbal concepts, but does not
require verbal responses; (Picture Concepts scaled score = 8). The Block Design subtest required
KAVON to use two-color cubes to construct replicas of two-dimensional, geometric patterns. This
subtest assesses nonverbal fluid reasoning and the ability to mentally organize visual information. More
specifically, this subtest assesses his ability to analyze part-whole relationships when information is
presented spatially. Performance on this task also may be influenced by visual-spatial perception and
visual perception-fine motor coordination, as well as planning ability; (Block Design scaled score = 4).

**WISC-IV Interpretive Report**

**Summary**

KAVON is a 6-year-old child who completed the WISC-IV. His general cognitive ability, as estimated by the WISC-IV, is in the Borderline range. KAVON's verbal comprehension and perceptual reasoning abilities were also both in the Borderline range (VCI = 71, PRI = 75).

**Composite Scores Summary**

| Scale | Sum of Scaled Scores | Composite Score | Percentile Rank | Confidence Interval | Qualitative Description |
|---|---|---|---|---|---|
| Verbal Comprehension (VCI) | 15 | 71 | 3 | 66-80 | Borderline |
| Perceptual Reasoning (PRI) | 18 | 75 | 5 | 69-85 | Borderline |
| Working Memory (WMI) | 7 | 62 | 1 | 57-73 | Extremely Low |
| Processing Speed (PSI) | 20 | 100 | 50 | 91-109 | Average |
| Full Scale (FSIQ) | 60 | 71 | 3 | 67-77 | Borderline |

**Verbal Comprehension Subtest Scores Summary**

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Similarities | 6 | 8 | <6:2 | 25 |
| Vocabulary | 9 | 5 | <6:2 | 5 |
| Comprehension | 1 | 2 | <6:2 | 0.4 |

**Perceptual Reasoning Subtest Scores Summary**

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Block Design | 3 | 4 | <6:2 | 2 |
| Picture Concepts | 6 | 8 | <6:2 | 25 |
| Matrix Reasoning | 4 | 6 | <6:2 | 9 |

**Working Memory Subtest Scores Summary**

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Digit Span | 4 | 3 | <6:2 | 1 |
| Letter-Number Sequencing | 1 | 4 | <6:2 | 2 |

**Processing Speed Subtest Scores Summary**

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Coding | 34 | 10 | 6:2 | 50 |
| Symbol Search | 14 | 10 | 6:2 | 50 |

SPENCER, KAVON
PAGE 5

ACADEMIC FUNCTIONING

When compared to others his expected grade level, Kavon's ability to apply skills were within the low average range. His academic tasks were within the very low range.

Broad Reading includes reading decoding, reading speed and the ability to comprehend and supply the correct missing word while reading. Kavon's standard score was within the low range (standard score of 72) for his expected grade. He was sometimes able to identify various letters of the alphabet but unable to read any simple words. On the Passage Comprehension Subtest, Kavon was able to recognize items. His overall reading ability was limited; reading tasks above the <K.8 grade level would be quite difficult for him.

Broad Math includes math computational skills, problem-solving and facility with basic math facts. Kavon's mathematics standard score was within the low range (standard score of 70) for his expected grade. He was inconsistent in his ability to write various numbers upon request and add single-digit numbers. On the Applied Problem Subtest, Kavon was able to count items and sometimes able to add and subtract quantities. His overall mathematics ability was limited; math tasks above the K.6 grade level would be quite difficult for him.

Broad Written Language includes production of written text, including spelling ability, writing fluency, and quality of written expression. Kavon's written language standard score was within the low range (standard score of 74) for his expected grade. He was able to imitate designs, but unable to write random letters at the request of the examiner. Kavon was able to write his first name but was unable to write responses to a few simple demands. Kavon's overall written language ability was limited; tasks measuring effective written expression in written language above the K.7 grade level would be quite difficult for him.

PERCEPTUAL/MOTOR SKILLS

Kavon earned a VMI Standard Score of 99 with a Percentile Rank of 44 and an Age Equivalent score of 5 years, 10 months. Her performance was indicative of average ability in the development of visual motor integration skills. Fine motor skills involving pencil and paper skills were observed to be adequate.

SPENCER, KAVON
PAGE 6

COMMUNICATION SKILLS

Kavon sometimes engaged in spontaneous conversation with the examiner. Expressive language appeared functional for communication purposes. Kavon was sometimes in need of repetition of instructions, suggestive of possible weaknesses in the input of information presented orally.

SOCIAL/EMOTIONAL FUNCTIONING

Human-figure drawing depicted characteristics associated with immaturity, dependency and impulsivity. Kavon's responses to Incomplete Sentences Blank items revealed themes related to dependency and normal childhood concerns. During the current interview process, Kavon presented as an emotionally dependent individual. He is playful and may have problems controlling his impulses. A conversation with Kavon's teacher revealed a student who is able to identify 7 out of 26 letters of the alphabet, displays difficulty in staying focused, inability to follow two-step directions and able to trace letters and write his name. His mother was reported to have stated that Kavon displays hyperactive behavior, exhibits difficulty following directions and slow progress in school. Reportedly, Kavon can identify some letters and numbers and complete his homework.

SUMMARY

Kavon, a six-year old male, earned a Full Scale IQ of 71, which classifies her functioning as Borderline. His general verbal comprehension abilities and perceptual reasoning abilities were in the same range. Current academic testing revealed that Kavon' performance was low average in written expression; and low in broad reading, mathematics, math calculation skills and written language. Language skills appeared functional for communication purposes but not age appropriate. Kavon's performance in the rendition of VMI designs revealed average ability in the development of visual-motor integration skills. Projective devices revealed emotional indicators related to impulsivity, dependency and immaturity.


Based on a review of reports, student interview and test results, Kavon's performance was thought to reflective of attention and academic deficits. A Clinical Evaluation is recommended to further assess the impact of attention difficulties on learning. A Speech and Language Screening/Evaluation would be beneficial to assess the development of his verbal comprehension skills.

SPENCER, KAVON
PAGE 7

EDUCATIONAL STRATEGIES

a. Time allowances will need to be extended for all copied and
   written assignments, particularly those from the chalkboard.

b. Provide activities allowing opportunities for free expression of
   ideas.

c. Assist the student on a one-to-one basis when presenting new
   material to be learned.

d. The overall view of an idea should be presented in as concrete
   manner as possible in order to insure understanding.

e. Provide success experiences that will enhance self-esteem.

f. The classroom environment should be structured to minimize
   auditory and visual distractions in order to enhance
   concentration ability.

*Carolyn Green*
Carolyn Green
NCSP School Psychologist

Educational Evaluation                                                                    Page 1
SPENCER, KAVON
November 22, 2004

Name: SPENCER, KAVON
Date of Birth: 09/25/1998                          Grade: 1.3
Age: 6 years, 2 months                             Examiner: CAROLYN GREEN
Sex: Male
Date of Testing: 11/22/2004

TESTS ADMINISTERED

*WJ III Tests of Achievement*

These tests provide measures of KAVON's academic achievement. A description of each ability is provided. His performance in each broad category is compared to grade peers using a standard score range. KAVON's proficiency is described categorically, ranging from very limited to limited; his test performance can be generalized to similar, non-test, grade-level tasks. Additional interpretation of academic task performance is provided.

ACHIEVEMENT

Written Expression measures KAVON's fluency of production and quality of expression in writing. KAVON's written expression standard score is within the very low to average range (percentile rank range of 2 to 29; standard score range of 68 to 92) when compared to others in his grade. His overall ability to express himself in writing is limited; writing fluency tasks above the grade 1.0 level will be quite difficult for him.

Broad Written Language includes production of written text, including spelling ability, writing fluency, and quality of written expression. KAVON's written language standard score is within the very low to low average range (percentile rank range of 1 to 10; standard score range of 66 to 81) for his grade. His overall written language ability is limited; tasks measuring effective expression in written language above the grade K.7 level will be quite difficult for him.

Math Calculation Skills measures KAVON's computational skills and automaticity with basic math facts. KAVON's mathematics calculation skills standard score is within the very low to low average range (percentile rank range of 1 to 11; standard score range of 65 to 81) for his grade. His mathematics calculation skills are limited; math calculation tasks above the grade K.7 level will be quite difficult for him.

Broad Reading includes reading decoding, reading speed, and the ability to comprehend connected discourse while reading. KAVON's reading standard score is within the very low to low range (percentile rank range of 2 to 6; standard score range of 68 to 76) for his grade. His overall reading ability is very limited; he will probably find grade-level tasks requiring letter and word identification and decoding, reading speed and rate, and comprehension of written text extremely difficult.

Broad Math includes mathematics reasoning and problem solving, number facility, and automaticity. KAVON's mathematics standard score is within the very low to low range (percentile rank range of 1 to 5; standard score range of 65 to 76) for his grade. His overall mathematics ability is limited; math tasks above the grade K.6 level will be quite difficult for him.

Academic Processing

KAVON's academic skills are very limited. Specifically, his math calculation skill and spelling are very limited. His sight reading ability is negligible.

SPENCER, KAVON
PAGE 2


Academic Applications.  KAVON's passage comprehension ability and writing ability are limited.  His quantitative reasoning is very limited.

## SUMMARY

KAVON's ability to apply academic skills is within the low average range of others at his grade level.  His academic skills are very low.

When compared to others at his grade level, KAVON's performance is low average in written expression; and low in broad reading, mathematics, math calculation skills, and written language.

TABLE OF SCORES: *Woodcock-Johnson III Tests of Achievement*
Report Writer for the WJ III, Version 1.1
Norms based on grade 1.3

| CLUSTER/Test | Raw | GE | EASY | to DIFF | RPI | PR | SS(68% BAND) | AE |
|---|---|---|---|---|---|---|---|---|
| BROAD READING | – | <K.8 | <K.8 | <K.8 | 15/90 | 3 | 72 (68–76) | 5–8 |
| BROAD MATH | – | <K.2 | <K.2 | K.6 | 39/90 | 2 | 70 (65–76) | 5–4 |
| BROAD WRITTEN LANG | – | K.3 | <K.0 | K.7 | 38/90 | 4 | 74 (66–81) | 5–8 |
| | | | | | | | | |
| MATH CALC SKILLS | – | K.3 | <K.2 | K.7 | 48/90 | 4 | 73 (65–81) | 5–6 |
| WRITTEN EXPRESSION | – | K.2 | <K.0 | 1.0 | 61/90 | 9 | 80 (68–92) | 5–7 |
| | | | | | | | | |
| ACADEMIC SKILLS | – | <K.2 | <K.2 | K.4 | 4/90 | 0.3 | 59 (54–63) | 5–4 |
| ACADEMIC FLUENCY | – | <K.8 | <K.8 | <1.2 | – | – | – | <5–9 |
| ACADEMIC APPS | – | K.5 | K.2 | K.8 | 40/90 | 10 | 81 (78–85) | 5–9 |

------------------------------------------------------------------

Form A of the following achievement tests was administered:

| | Raw | GE | EASY | to DIFF | RPI | PR | SS(68% BAND) | AE |
|---|---|---|---|---|---|---|---|---|
| Letter-Word Identification | 7 | <K.0 | <K.0 | K.2 | 0/90 | 1 | 63 (59–66) | 4–11 |
| Reading Fluency | 0 | <K.8 | <K.8 | <1.0 | – | – | – | <5–10 |
| Calculation | 1 | K.3 | <K.2 | K.5 | 16/90 | 4 | 74 (66–82) | 5–6 |
| Math Fluency | 0 | <K.2 | <K.2 | <2.0 | – | – | – | <5–6 |
| Spelling | 11 | K.3 | K.1 | K.5 | 9/90 | 4 | 73 (67–78) | 5–8 |
| Writing Fluency | 0 | <K.0 | <K.0 | <1.5 | – | – | – | <5–6 |
| Passage Comprehension | 9 | K.9 | K.7 | 1.2 | 61/90 | 30 | 92 (89–95) | 6–2 |
| Applied Problems | 14 | K.1 | <K.0 | K.4 | 23/90 | 7 | 78 (74–82) | 5–0 |
| Writing Samples | 2–A | K.2 | <K.0 | K.7 | 38/90 | 8 | 79 (71–87) | 5–8 |

# *BEFORE DCPS STUDENT HEARING OFFICE*

# *IN THE MATTER OF KAVON SPENCER*

# *PETITION FOR HEARING*

# *<u>EXHIBIT NUMBER TWO</u>*



*District Of Columbia*
*Public Schools*

**Wilkinson Elementary School**
2330 Pomeroy Road S.E.
Washington, D.C. 20020

Telephone #:  (202) 698-1111
Facsimile #:  (202) 698-1112

*Dr. Margaret Aliendre, Principal*
*Judy M. Jones, Assistant Principal*

11.8.05

Dear Parent/Guardian:

Your son/daughter Kevon Spencer has displayed behaviors not conducive to a learning environment.  Though we've tried several strategies, the behavior has not changed.

We would like to provide your child with the education he/she deserves, but his/her disruptive behavior impedes the teaching and learning process.  Working together we can modify these behaviors and increase the opportunities for learning to take place.

Please accompany your child to school on Monday Nov 14, 2005 to meet with the principal and your child's classroom teacher to further discuss behavior management strategies, which may assist in changing these disruptive behaviors..

Your child will not be admitted to his/her classroom until you meet with the principal.

Behavior:  Kevon is running the hall + is extremely disrespectful to the Principal.

Educationally,

Dr. M. Aliendre
Principal

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

SHADONNA SPENCER,
Parent and Next Friend of K. S.

       Plaintiffs

    v.                         Civil Action No. _____
                                    JUDGE: _____

DISTRICT OF COLUMBIA, _et al,._

       Defendants.

_____

# _PLAINTIFF'S EXHIBIT NUMBER TWO_

# STATE EDUCATION AGENCY
# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| **Kavon S.** | ) | |
| | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| **DCPS/Wilkinson ES** | ) | |
| | ) | |
| | ) | DISTRICT OF COLUMBIA |
| | ) | |
| Respondent | ) | PUBLIC SCHOOLS |

## SCHEDULING MEMORANDUM

1.  A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2.  The complaint notice was filed on ░░░░░░░░░░░░

3.  The deadline for the resolution meeting is ░░░░░░░░░░░░ unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.  ***Prior Written Notice Not Issued by the Local Educational Agency***. If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

1.  An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
2.  A description of other options that the IEP Team considered and the reasons why those options were rejected;
3.  A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and
4.  A description of the factors that are relevant to the agency's proposal or refusal.

Rev'd. 7/6/05

B.   Prior written notice, if not already provided to the parent, must be sent by the Local

Educational Agency to the complaining party no later than ████████████

C.   *Deficiency Notice.* A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.   The deadline for filing a deficiency notice ████████████

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence. A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice. The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law. Information about the time, date, and location of the resolution meeting will be provided by the school or the Local Education Agency responsible for scheduling the meeting.

Rev'd. 7/6/05

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

SHADONNA SPENCER,
Parent and Next Friend of K. S.

       Plaintiffs


     v.                            Civil Action No. _____
                                      JUDGE: _____

DISTRICT OF COLUMBIA, _et al,_.

       Defendants.

_____


# _PLAINTIFF'S EXHIBIT NUMBER THREE_

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
OFFICE OF ACADEMIC SERVICES

**RESOLUTION MEETING CONFIRMATION
(RMC)**

_Kavon Spencer_
Student

_9/25/98_
DOB

_Wilkinson ES_
School

Dear Parent/Guardian:

Pursuant to the Individuals With Disabilities Education Improvement Act of 2004 § 615 (f)(1)(B), this is a confirmation of your meeting to discuss your pending due process complaint and the facts that support it. The goal of the resolution meeting is to discuss the complaint and provide an opportunity for DCPS to resolve it. The IDEA 2004 requires that prior to an impartial due process hearing a resolution meeting must be held within 15 (fifteen) days of your filing your complaint.

Your participation is essential in an attempt to resolve your concerns. The District of Columbia Public Schools hopes that you will make every effort to attend this meeting. The resolution meeting is required prior to a due process hearing. Please be advised that failure to attend this meeting may result in a waiver of your right to due process hearing.

The date, time and place of the meeting are printed below.

_Wednesday, 12/21/05_
Date

_1:00 pm_
Time

_Wilkinson Elementary School_
Location

_2330 Pomeroy Road, SE_

_Jillian Diesmer_
Sent By

RMC Letter of Confirmation to the Parent
7-14-05

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

SHADONNA SPENCER,
Parent and Next Friend of K. S.

        Plaintiffs

    v.                              Civil Action No. _____
                                     JUDGE: _____

DISTRICT OF COLUMBIA, _et al,._

        Defendants.

_____

# _PLAINTIFF'S EXHIBIT_ _NUMBER FOUR_

12/14/05

MS. Shadonna Spencer - I with draw my conplaint dgAingst ~~the~~ Wilkinson. I did not thiik it would go this fAr woith A hcAring. I feel that Wilknason is helping me with KAvons problems.

Shadonna Spencer
(202) 439-8343

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

SHADONNA SPENCER,
Parent and Next Friend of K. S.

        Plaintiffs

     v.                                Civil Action No. _____
                                         JUDGE: _____

DISTRICT OF COLUMBIA, _et al,_.

        Defendants.

_____

# _PLAINTIFF'S EXHIBIT_
# _NUMBER FIVE_

Ms. S. Spencer
7 Elmira Street, SE
Apartment 4
Washington, D.C. 20032

December 14, 2005

Dr. M. Aliendre
Wilkinson Elementary School
2330 Pomeroy Road, SE
Washington, D.C. 20020

Dear Dr. Aliendre:

At the school I did not have my lawyer with me when I wrote the December 14, 2005
letter saying I withdraw my complaint.  I did not understand.  I want my lawyer to
represent me in my case.

Please deal with my lawyer.  I want my lawyer to represent me on my case.  I want my
case to go forward.

Sincerely,

Ms. S. Spencer

cc:  Roy Carleton Howell, esquire

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

SHADONNA SPENCER,
Parent and Next Friend of K. S.

        Plaintiffs


     v.                         Civil Action No. _____
                                       JUDGE: _____

DISTRICT OF COLUMBIA, _et al,_.

        Defendants.

_____

# _PLAINTIFF'S EXHIBIT NUMBER SIX_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHADONNA SPENCER,
Parent and Next Friend of K. S.

        Plaintiffs

      v.

                               Civil Action No. _____
                               JUDGE: _____

DISTRICT OF COLUMBIA, *et al,*.

        Defendants.

### AFFIDAVIT OF ROY CARLETON HOWELL

I, Roy Carleton Howell, hereby attest to the following:

    1.     I am over the age of eighteen.

    2.     I am an officer of this Court and represent plaintiff.

    3.     On 6th December 2005 I filed a Due Process Complaint Notice with the State Agency for the District of Columbia requesting a due process Hearing.

    4.     I received a **SCHEDULING MEMORANDUM** from the State Education Agency stating the deadline for the resolution meeting is 21st December 2005.

    5.     At no time did the government provide me written notice of the name, address or telephone number of the lawyer representing them in this administrative matter, although the government was well aware of my representation of plaintiff herein.

    6.     At no time did the government voluntarily serve upon me the date and time of the Resolution meeting.

1

7.      In a recent telephone call to Ms. Diesner of the Wilkinson School she refused to provide me the name of the attorney representing the public school, and she was uncooperative in providing me the date and time of the resolution meeting.

8.      In telephone calls and faxes to Ms. Diesner concerning discovery of information she was uncooperative. I therefore filed a complaint with the principal Dr. Margaret Aliendre to compel discovery.

9.      As a result of my threat to sue to compel discovery of the resolution meeting date/time, discovery information, and complaints to the principal Dr. Margaret Aliendre, Ms. Diesner finally provided me a copy of a resolution meeting set for 21st December 2005 at 1:00 pm which was only told to my client. Also, I acquired the requested records.

10.     The State met with my client at the Wilkinson School without my knowledge, consent or approval on or about 14th December 2005 and negotiated a settlement where my client unintelligently settled, terminated, and withdrew her case without the advise of counsel and waived all rights to any benefits sued for in the administrative complaint.

11.     I received a telephone call from a Ms. Diesner informing me that the case was settled with my client. I immediately asked for the name of the lawyer representing the State and she refused to provide me the name. Whereupon, I told her that I would sue her if she did not provide me with information. She hung up the telephone.

12.     On 14th December 2005 my client sent Dr. Margaret Aliendre a letter stating that she did not understand what the State negotiated with her, that her lawyer was not present at the school meeting, and she wanted the school to deal with her lawyer

and for the case to go forward.

13.    Subsequently, I received a telephone call from DCPS Attorney Ms.
Herbert.  I worked out a deal with Ms. Herbert to hold the resolution meeting in
compliance with the statutory timeline.

14.    On 16th December 2005 I received a voice mail from Manager and DCPS
Attorney Quinne Harris-Lindsey stating that pursuant to her authority my client's case is
being removed from the calendar, and there will be no resolution meeting or hearing.


I, Roy Carleton Howell, as an officer of this Court do affirm and swear under the
penalty of perjury that the foregoing is true and correct.

_____
Roy Carleton Howell


On this __20th__ day of December 2005 before me personally appeared Roy
Carleton Howell to me known to be the person described herein, and who executed the
foregoing instrument.


My term expires:  __03 / 08 / 08__          _____
                                             NOTARY PUBLIC

FLAUBERT MBONGO
Notary Public
Montgomery Co., MD
Seal                                My Comm. Exps. March 8, 2008

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

SHADONNA SPENCER,
Parent and Next Friend of K. S.

        Plaintiffs

     v.                        Civil Action No. _____
                                  JUDGE: _____

DISTRICT OF COLUMBIA, _et al,_.

        Defendants.

_____

# _PLAINTIFF'S EXHIBIT_
# _NUMBER SEVEN_

**TRANSCRIPT OF FRIDAY, 16TH DECEMBER 2005 VOICE MAIL MESSAGE FROM DEFENDANT QUINNE HARRIS-LINDSEY TO ATTORNEY ROY CARLETON HOWELL.**

**Quinne Harris-Lindsey:** Hi Mr. Howell this is Quinne Harris Lindsey. I am stepping in on a matter, the student's name is Kavon Spencer. I think you had a conversation with Ms. Herbert – also Diesner at Wilkinson. Unfortunately I am going to have to overrule Ms. Herbert's decision and her discussion with you about rescheduling the resolution meeting. We are in possession of a letter written by the parent – my understanding is it was not under duress or at the, at the instruction of the school to withdraw, withdraw this hearing. The only thing, my understanding is the parent came to the school and told Ms. Diesner she did not want to go forward. And as we always do is when a parent comes in and says that we tell them to put it in writing. But other than that we gonna move forward and she put it in writing. So I know Ms. Diesner and I understand your feelings about the matter however I am unable, we are not going to put this case back on the calendar and actually move it ahead and dismiss. So you feel free to give me a call at 202 442-5000. But I would ask that you refrain from any verbally abusive dialogue with Ms. Diesner. That troubles me a bit because it didn't seem to be in character with what I recall in dealing with you. But if your have any problems with this please feel free to give me a call and we can discuss it. Thank you.

I, Roy Carleton Howell, as an officer of this Court do affirm and swear that the foregoing transcript was prepared from a tape recording from my office voice mail.



Roy Carleton Howell

On this 20th day of December 2005 before me personally appeared Roy Carleton Howell to me known to be the person described herein, and who executed the foregoing instrument.

My term expires: 03/08/08 _____      _____
                                                NOTARY PUBLIC

Seal    FLAUBERT MBONGO
        Notary Public
        Montgomery Co., MD
        My Comm. Exps. March 8, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

SHADONNA SPENCER,
Parent and Next Friend of K. S.

     Plaintiffs

    v.                                          Civil Action No. _____
                             JUDGE: _____

DISTRICT OF COLUMBIA, *et al,*.

     Defendants.

---

# *PLAINTIFF'S EXHIBIT NUMBER EIGHT*

*"Harris-Lindsey, Quinne (OGC)" <Quinne.Harris-Lindsey@k12.dc.us>* wrote:

Mr. Howell, I have signed off on your invoice with the understanding that future invoices will provide more individualized itemization.

*Quinne Harris-Lindsey*
*Acting Supervisory Attorney Advisor*
*Office of the General Counsel*
*(202) 442-5169 - direct*
*(202) 442-5098 - fax*

*This electronic transmission contains information from the Office of the General Counsel for the District of Columbia Public Schools, which may be confidential or privileged. The information is intended for the use of the above addressee(s) only. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you received this transmission in error, please notify us by telephone, 202/442-5000, or by reply electronic mail to the sender.*

-----Original Message-----
**From:** Roy Howell [mailto:professorhowell1954@yahoo.com]
**Sent:** Tuesday, November 08, 2005 4:52 PM
**To:** Harris-Lindsey, Quinne (OGC)
**Subject:** resolution of the issue per our telephone conversation

8th November 2005

Thank you for the your time to resolve the issue relative to my invoice. In future it is necessary to identify "wait time", "travel time" from other legal work. Per your promise, be so good to email me the cogent data/information on invoice submission.

Thank you for your promise to submit my invoice to Finance today. Be so good to acknowledge if the invoice has now gone to Finance.

Respectfully,
Roy Carleton Howell
_____

Yahoo! FareChase - Search multiple travel sites in one click.