UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SHADONNA SPENCER, : | |
|     Plaintiff, : | |
|     v. : | Civ. Action No. 05-2439 (RMU) |
| DISTRICT OF COLUMBIA, et al., : | |
|     Defendants. : | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER
OR ALTERNATIVELY A PRELIMINARY INJUNCTION**

Defendants, by counsel, hereby respond to Plaintiff's "Motion for Temporary Restraining Order or Alternatively a Preliminary Injunction," filed December 21, 2005 ("Motion"). For the reasons set forth below, there is no merit to the Motion and the action herein should be dismissed forthwith.

**INTRODUCTION**

The complaint herein asserts (para. 20) that the Plaintiff filed a request for a due process hearing on December 6, 2005, challenging the propriety of an Individualized Educational Program ("IEP") for K.S. because it failed to include certain evaluations and assessments. Distilled of all hyperbole, the remainder of the complaint is devoted to claims that an administrative hearing on that request has not yet been scheduled, and that such a failure violates the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"), Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and 42 U.S.C. § 1983.

More specifically, the complaint alleges that Plaintiff's counsel received, on December 9, 2005, a notice of an IDEA-required resolution meeting, but DCPS failed to include therein information concerning "the government's attorney." Complaint, para. 23. It is further asserted that DCPS failed to contact Plaintiff's counsel to "negotiate a date and time for a resolution meeting," and that DCPS generally "exclude[s] plaintiff's lawyer from . . . resolution meeting[s]," "withhold[s] information from plaintiff's lawyer about meeting date and time," and "conceal[s] the name of [DCPS'] attorney;" in this case, it is said, DCPS "excluded plaintiff's attorney from a meeting at their school concerning the resolution and settlement of [the Plaintiff's] administrative due process case, and settled the case without counsel's permission, or knowledge." Complaint, paras. 26-29.  While the Plaintiff, in writing, stated on December 14 that she was "withdraw[ing] my complaint against Wilkinson [Elementary School]," the complaint asserts that "she did not understand the letter the government had her write," and that in a later letter drawn by Plaintiff's counsel, the Plaintiff stated that she "want[ed] the case to go forward," and that DCPS should deal with her counsel.  Complaint, paras. 30-31.  Yet on December 16, 2005, the complaint asserts, "the government removed plaintiff's case from the calendar and terminated it from the docket for consideration for a due process Hearing pursuant to order from government manager Quinn[e] Harris-Lindsey." Complaint, para. 32.

Based on these circumstances, the complaint asserts that the removal of the administrative complaint from the due process hearing schedule "is a violation of due process of law and a denial of a free appropriate public education which inflicts irreparable injury upon this small child" (Count I);  that the student "has suffered

irreparable injury and continues to suffer immediate irreparable injury from the government's ongoing violations of plaintiff's federal statutory, federal common law, and federal regulatory rights" (Count II); that the "government engages in unauthorized communications with plaintiff to the exclusion of her attorney of record" (Count III); that DCPS "conceals the name, address and telephone number of their lawyer at various stages of the administrative process . . . to gain advantage and circumvent the rules of Professional Responsibility" (Count IV); and that Quinn[e] Harris-Lindsey, "the manager for paying and approving" attorneys' requests for IDEA attorneys' fees, is using that position "as unfair leverage against plaintiff's attorney in the administrative litigation of this case" and, as "litigator for the government against plaintiff's counsel in this case" has an impermissible conflict of interest (Count V).  Various remedies are requested to rectify these wrongdoings. Complaint, pp. 8-9.

       In the Motion, the Plaintiff, expanding further on the assertions in the complaint, essentially asks for immediate directives (1) that DCPS reschedule and hold a due process hearing on the subject matter of the Plaintiff's December 6, 2005, hearing request; (2) that DCPS not have any settlement or other communications with the Plaintiff without the Plaintiff's counsel's presence, and that DCPS provide counsel with "notice and copies of" any communications with the Plaintiff; (3) that DCPS not "conceal[ ] the government attorney's name, address and telephone number from plaintiff's attorney;" and (4) that Quinne Harris-Lindsey, an attorney in DCPS' Office of General Counsel ("OGC") be barred from "participating in the litigation of this case in any fashion whatsoever, and reviewing any vouchers for payment of attorney's fees in this case."

As shown below, the Plaintiff's motion is utterly without merit.

## PRELIMINARY STATEMENT

Because the Motion so inaccurately characterizes both the relevant facts and the law, it is necessary first to understand both the pertinent chronology and the statutory framework within which the events leading to this complaint's filing occurred.

**I.    The Applicable Statutory Framework for Consideration of Requests for Administrative Hearings Under IDEA.**

20 U.S.C. §1415(f)(1)(A) provides that, "whenever a complaint has been received under subsection (b)(6) or (k) of this section, the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." The complaint must concern a matter relating to the identification, evaluation or educational placement of the child, or the provision of a free appropriate public education of a child. In the past, Federal regulations have generally required that a decision following the due process hearing be issued within 45 days of the date the hearing request was filed. 34 C.F.R. §300.511.

The procedures to be followed after the filing of a request for an administrative due process hearing were significantly altered in Congress' reauthorization of IDEA in 2004.  Now, on receipt of such a complaint, DCPS must convene a "resolution meeting" prior to holding a due process hearing.  As provided by 20 U.S.C. §1415(f)(1)(B):

> (i) Preliminary meeting.  Prior to the opportunity for an impartial due process hearing under subparagraph (A), the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint—

4

>> **(I)** within 15 days of receiving notice of the parents' complaint;
> **(II)** which shall include a representative of the agency who has decisionmaking authority on behalf of such agency;
> **(III)** which may not include an attorney of the local educational agency unless the parent is accompanied by an attorney; and
> **(IV)** where the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint, unless the parents and the local educational agency agree in writing to waive such meeting, or agree to use the mediation process described in subsection (e) of this section.

> (ii) Hearing. If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence.

> . . . .

20 U.S.C. §1415(f)(1)(B).[1] The purpose of the pre-hearing resolution process is to encourage the amicable resolution of parents' concerns, and to avoid needless litigation.[2] To alleviate potentially unnecessary contention, the statute does not permit the recovery

---

[1] See also 70 Fed. REg. 35,808-09 (June 21, 2005):
> Proposed [34 C.F.R.] §300.510(b)(2) would clarify that the regulatory timeline for issuing a final due process hearing decision begins at the end of the new 30-day resolution period that starts when the due process complaint is received. This provision is based on the language in section 615(f)(1)(B)(ii) of the Act stating that the applicable due process timelines commence at the end of this 30-day period.

[2] See, e.g., Schaffer v. Weast 126 S.Ct. 528 (2005), 535 -536 (U.S. 2005):
> Litigating a due process complaint is an expensive affair, costing schools approximately $8,000- to-$12,000 per hearing. See Department of Education, J. Chambers, J. Harr, & A. Dhanani, *What Are We Spending on Procedural Safeguards in Special Education* 1999-2000, p. 8 (May 2003) (prepared under contract by American Institute for Research, Special Education Expenditure Project). Congress has also repeatedly amended the Act in order to reduce its administrative and litigation-related costs. For example, in 1997 Congress mandated that States offer mediation for IDEA disputes. Individuals with Disabilities Education Act Amendments of 1997, Pub.L. 105-17, § 615(e), 111 Stat. 90, 20 U.S.C. § 1415(e). In 2004, Congress added a mandatory "resolution session" prior to any due process hearing. Individuals with Disabilities Education Improvement Act of 2004, Pub.L. 108-446, § 615(7)(f)(1)(B), 118 Stat. 2720, 20 U.S.C.A. § 1415(f)(1)(B) (Supp.2005). It also made new findings that "[p]arents and schools should be given expanded opportunities to resolve their disagreements in positive and constructive ways," and that "[t]eachers, schools, local educational agencies, and States should be relieved of irrelevant and unnecessary paperwork burdens that do not lead to improved educational outcomes." §§ 1400(c)(8)-(9).

of attorneys' fees for attendance at resolution meetings, see 20 U.S.C. §1415(i)(3)(D)(iii), and does not permit the attendance of a DCPS attorney unless the student's parent are accompanied by an attorney, 20 U.S.C. §1415(f)(1)(B)(i)(III).

## II. The Pertinent Chronology in This Case.

As set forth in the attached Exhibit 1, on December 6, 2005, Ms. Jullian Diesner, Special Education Coordinator at Wilkinson Elementary School ("Wilkinson ES"), received a Complaint Notice concerning the student, K.S. On December 7, 2005, Ms. Diesner called Shadonna Spencer – the Plaintiff and mother of K.S. – and scheduled a Resolution Session for December 21, 2005. Id; see also Motion, Ex. 3. A Scheduling Memorandum in that regard (Motion, Ex. 2) was furnished to the Plaintiff and, as acknowledged in the complaint (para. 22) and the Motion Memorandum (p. 6), was received by Plaintiff's counsel.

On December 8, 2005, Ms. Spencer went to Wilkinson ES and spoke to Ms. Diesner about the upcoming resolution meeting. See Exhibit 1 hereto. When Ms. Spencer said that she did not intend to take legal action against the school, Ms. Diesner advised Ms. Spencer to share her concerns with her attorney. Id. Five days later, on December 13, 2005, Ms. Diesner confirmed the date and time of the Resolution Session with Plaintiffs' attorney, Mr. Roy Howell. During that conversation, Ms. Diesner told Mr. Howell that Ms. Spencer had indicated that she did not want to proceed with the complaint. Id.

The following day, December 14, 2005, Ms. Spencer returned to Wilkinson ES and spoke to Ms. Diesner again. Ms. Spencer said she did not want to proceed with the resolution meeting and did not want any further contact with her attorney. Id. Ms.

6

Spencer wrote a statement expressing her wish to withdraw her complaint against the school.  See Motion, Ex. 4.  On December 15, 2005, Ms. Diesner faxed a copy of Ms. Spencer's statement to Plaintiffs' counsel. Exhibit 1 hereto.  In a telephone call that day, Mr. Howell became "extremely loud, verbally aggressive and threatening towards" Ms. Diesner, threatening, among other things, "to sue [her] personally in federal court." Id.  Mss. Herbert and Harris-Lindsey, both attorneys in the OGC, were the object of similarly assertive, abusive communications from Mr. Howell on December 13 and 16, 2005, respectively.  See Exhibits 2 and 3 hereto.

On December 21, 2005, Ms. Diesner received a letter dated December 14, 2005, signed by Ms. Spencer, stating that she had not understood what she had written before, and did, indeed, intend to proceed with the due process complaint. Motion, Ex. 5.  Ms. Diesner spoke to Ms. Spencer via telephone on that same day.  Ms. Spencer said that she had signed something her attorney had given her, but that she had not written a letter. Exhibit 1 hereto.  Ms. Spencer also stated that she had been told by her counsel that she could not withdraw her complaint once the process had already begun. Id.  Ms. Diesner informed her that she would reschedule the resolution meeting as the attorney had requested, and would not have any further direct contact with Ms. Spencer to avoid any future misunderstandings. Id.  And on December 22, 2005, Mr. Howell was advised of the rescheduling of the resolution meeting (earlier cancelled in light of Ms. Spencer's December 14 letter at DCPS) for January 10.

Most recently, in a December 23, 2005, memorandum, Dr. Margaret Aliendre, the Principal of Wilkinson ES, recounts a conversation with Ms. Spencer in early December that is consistent with the recollections of other DCPS personnel, and relates a December

7

21 meeting with K.S.'s grandfather confirming yet again Ms. Spencer's lack of interest in further pursuit of the December 6 administrative complaint. Exhibit 4 hereto.

## ARGUMENT

I.     **The Applicable Standards for Injunctive Relief.**

In order to obtain injunctive relief, Plaintiffs must satisfy *each* prong of the following four-part test: (1) that there is a substantial likelihood of success on the merits; (2) that there is an imminent threat of irreparable harm should the relief be denied; (3) that more harm will result to plaintiffs from the denial of the injunction than will result to the defendants from its grant; and (4) that the public interest will not be disserved by the issuance of the requested order. District of Columbia v. Group Ins. Admin., 633 A.2d 2, 21–24 (D.C. 1993); Barry v. Washington Post Co., 529 A.2d 319, 320–321 (D.C. 1987); In re Antioch Univ., 418 A.2d 105, 109 (D.C. 1980); Wieck v. Sterenbuch, 350 A.2d 384, 387 (D.C. 1976); Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir. 1977); Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 259 F.2d 921, 925 (D.C.Cir. 1958).

II.    **The Plaintiffs are Not Entitled to a Injunctive Relief in This Case.**

   A.    **The Plaintiffs will not succeed on the merits of their claims.**

      1.    **Much of the Motion's presentation is patently meritless.**

As a preliminary matter, it should be made clear what is *not* genuinely at issue here. **First,** the propriety of DCPS' adoption of an IEP for the student without having considered evaluations asserted in the complaint to have been necessary is a substantive matter properly considered first at the administrative level. Assertions now of a denial of FAPE are at best premature; no administrative determination to that effect has yet been

8

made.  While it is true that the December 6 hearing request raised the need for an evaluation prior to the adoption of an IEP, it is also true that the prescribed timetables for administrative consideration of that issue – in an administrative hearing after a statutorily-prescribed resolution meeting – have not yet expired.  Even if Ms. Spencer's December 14 withdrawal of her due process complaint were ignored, the 30 day resolution period would not expire until January 5, and the 45 day period thereafter for the conduct and conclusion of the due process hearing requested would not expire until February 19.

In light of the counsel-prepared letter signed by Ms. Spencer dated December 14 (received by DCPS on December 21), DCPS has considered the December 6 hearing request to have been renewed, and a resolution meeting is now scheduled for January 10.  To the extent that agreement cannot be reached during the resolution period, the propriety of challenged IEP will be appropriately addressed in a due process hearing.  For all its aggressive rhetoric, the Motion nowhere contends that DCPS is outside the statutory timetables for convening the resolution meeting or conducting a hearing.  Until that process is concluded, there is nothing properly before the Court concerning the IEP identified in the due process hearing request.  And there is no demonstrated basis for the Court's directing administrative timetables different from those established by IDEA and related federal regulations.

**Second,** the Motion's recurring theme that all DCPS personnel are somehow foreclosed from talking with a student's parent about IEP (or any other) concerns outside the presence of counsel is transparently contrived, and the Motion is without any credible support whatever.  As the Court is aware, there is no bar in civil litigation to clients

talking with clients. And this was not a case where parties were committed to (and about to commence) a hearing, and DCPS attorneys were trying to influence the Plaintiff or Plaintiff's proposed witnesses behind Plaintiff's counsel's back. What occurred were communications between Wilkinson ES educational personnel and the student's mother, and which included exchanges on the subject of the hearing request; concerning the hearing request, communications occurred pursuant, in part, to *a process Congress specifically designed to permit direct communications between educators and parents to see whether hearings can be avoided.*

At any point, Ms. Spencer could have expressed a desire to have counsel present, and DCPS would have honored that request. Indeed, at more than one point, DCPS personnel suggested that questions concerning administrative processes be directed to her attorney. But in fact, Ms. Spencer returned to Wilkinson ES after Ms. Diesner advised her that she should consult with her counsel to say that she indeed did not want to pursue the hearing request. And that view appeared to have been changed (although more recent events raise new issues in that regard) only after her counsel apparently demanded that she move forward nonetheless.

Nowhere does the complaint or the Motion assert OGC personnel communicated with Ms. Spencer. And the fact that a hearing request is filed does not itself bar any communications between non-legal DCPS personnel and a student's parent about educational matters. To believe otherwise is to assume that lawyers, not educators, control the course of ongoing educational decisions relating to students.

**Third**, in the complaint and throughout the Motion is the recurring theme that Plaintiff was somehow "disadvantaged" because DCPS "concealed" the identity of DCPS

counsel. That repeating theme is plainly disingenuous. With every request to DCPS (and the Courts) for IDEA attorneys' fees, Plaintiff's counsel touts his experience with DCPS/IDEA litigation. Counsel knows where OGC is, knows its telephone number, and can use a telephone. All it would have taken was a call to inquire who, if anyone, was handling this particular matter. If there was any "disadvantage" to the Plaintiff involved at any point (and it should be recalled that each time Ms. Spencer has communicated directly with DCPS educators she has disclaimed any interest in pursuing the December 6 hearing request), it was a product of counsel's inertia, not some dark "concealment" conspiracy. This matter was initially being handled at local DCPS school level in any event, not by attorneys in OGC.

**Finally**, the Complaint and the Motion dwell strangely on claims that Ms. Quinne Harris-Lindsey, an attorney in OGC, faces some form of conflict of interest because she is (1) a "'paymaster' with omnipotent powers to reject or approve IDEA vouchers to attorneys" (Motion Memorandum, p. 18), and (2) is "an over-zealous advocate advancing the interests of her governmental clients" (id.). The complaint (para. 50) "demands" that Ms. Harris-Lindsey "be immediately enjoined from any participation in the litigation of this case, and reviewing any vouchers for payment of attorney's fees in this case." The Motion Memorandum (p. 18) asserts that "defendant[3] Quinn[e] Harris-Lindsey must be immediately removed from her second governmental role of payment of IDEA vouchers."

While space is devoted to such (mostly inaccurate) assertions in the Plaintiff's filings – vitriolic characterizations built wholly on self-serving rhetoric – the Defendants

---

[3] In fact, while Ms. Harris-Lindsey is identified on the face of the complaint as an individual to be *served* for DCPS, she is not a defendant herein, and is not identified as such in the complaint (p. 3).

11

are unable to divine either the legal point of those assertions, or any coherent relationship to the basic subject matter of the complaint or the Motion. What, we cannot understand, do these "concerns" have to do with claims that DCPS has improperly refused immediately to convene a due process hearing? The Defendants will not waste the Court's time trying here to understand, and then refute, an apparent paranoia about future DCPS consideration of yet-to-be-filed fee invoices by Plaintiff's counsel for reimbursement for yet-to-be-determined prevailing parties. Should a hearing on the Motion be held, Plaintiff's counsel may be able better to explain how these assertions concerning Ms. Harris-Lindsey are relevant.

        2.    **The only surviving legal claim – that Plaintiff is entitled to an <u>immediate administrative hearing – defies the statutory scheme.</u>**

At bottom, the Motion contends that the Plaintiff is entitled to the commencement of an administrative hearing "within 5 days." Complaint, para. 39. That claim is plainly without merit. As shown at the outset, IDEA provides a 30-day resolution period after a due process hearing request is filed. If, after the 30-day resolution period, no agreement has been reached, DCPS is required to initiate and conclude the hearing process within 45 days thereafter.

Viewing the circumstances here most favorably to the Plaintiff, in light of Ms. Spencer's withdrawal of the December 6 hearing request on December 14, the hearing request could only be considered to have been "resubmitted" on December 21, when DCPS received the counsel-prepared letter from Ms. Spencer dated December 14. The 30-day resolution period will not be concluded, therefore, until January 20. And the 45-day period for conclusion of the administrative hearing process will not be concluded

until March 6.  The Motion's demand that a hearing be ordered in 5 days is patently unsupported, and unsupportable.

As to the merits of the substantive matters presented in the Motion, therefore, there is no likelihood of Plaintiff's prevailing on the merits.  Indeed, there appears to be a serious question whether this suit, and the Motion's claims, have been authorized by the party on whose behalf they have been presented.

### B. There has been no demonstration that the student will suffer irreparable harm in the absence of injunctive relief.

An essential prerequisite to injunctive relief is a sufficient showing by the plaintiffs that they will suffer irreparable harm if injunctive relief is not granted. See, e.g., Davenport v. International Brotherhood of Teamsters, 166 F.3d 356, 360 (D.C. Cir. 1999). See also Sampson v. Murray, 415 U.S. 61, 88–90 (1974).

> Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur.  The movant must provide proof . . . indicating that the harm is certain to occur in the near future.

Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).

"[A]n injunction should not be issued unless the threat of injury is imminent and well-founded, *and* unless the injury itself would be incapable of being redressed after a final hearing on the merits." Wieck, 350 A.2d at 388 (emphasis added). See also Wisconsin Gas Co., 758 F.2d at 674. The movant has the burden to come forward with admissible evidence that he will suffer irreparable harm unless injunctive relief is granted. Davenport, 166 F.3d at 360.

Here, there has been no showing whatever of irreparable harm pending a resolution of the merits.  The Motion Memorandum (at pp. 12-13, 20-22) contends only that the IEP challenged in the administrative hearing request was improper, and simply

13

generalizes that, since the "special education determinations, related services programs and placement articulated in his IEP are all invalid, defective and inappropriate," the student "has suffered irreparable injury and will continue to suffer irreparable injury to his young emotional well being, special educational advancement while realizing substantial overall set backs socially and academically." Motion Memorandum, p. 13.

All such generalizations, however, assume what has yet to be demonstrated – that the IEP in fact was improper. But that matter will be the subject of administrative proceedings, if Ms. Spencer indeed chooses to proceed to hearing, and intervening resolution efforts are unsuccessful. And it is there that the Motion's contentions will be considered and ruled on. Certainly, Plaintiff here has not provided any sufficient basis for the Court's reaching an informed conclusion on the propriety of the challenged IEP, even if it were appropriate for the Court to short-circuit the statutorily-prescribed administrative processes and to undertake such an evaluation in the first instance.

As to this element of demonstrating the propriety of immediate injunctive relief, therefore, there is *nothing* in the way of a specific showing of injury of *any* particular nature. All that is offered is generalized pleading rhetoric. And it requires no citation to state that such statements are insufficient to satisfy this prerequisite to the relief requested.

      C.      **The balance of harms favors the Defendants**.

As to this element, the Plaintiff states only the following: "Here, *sub judice*, there can be no harm in granting relief that simply requires the government to meet their undisputed legal obligations and provide plaintiff a due process Hearing which will

guarantee KS a free appropriate public education pursuant to federal law." Motion Memorandum, p. 22.

That summary assertion, however, is not only facially insufficient to meet the Plaintiff's burden, it assumes a variety of facts already demonstrated to be inaccurate. As noted above, IDEA and related federal regulations specifically provide for the administrative procedures governing challenges to the adoption of student IEPs. Applicable timetables are being met, and a grant of the requested relief would impose on DCPS inconsistent requirements. It is submitted that potential harm to the Defendants, and violence to the Congressional legislative processes, is clear.

### D. Granting the requested injunctive Relief would not be in the public interest.

In general terms, grant of the relief requested here would represent a major disruption of a carefully crafted legislative scheme for evaluating special education students, developing their IEPs, and conducting an administrative review of disputed IEPs. While IDEA provides procedures for the development of students' IEPs – and for unsatisfied parents' challenges to those IEPs – the Plaintiffs would have the Court direct the conduct of such matters in a fashion directly at odds with statutory and regulatory prescriptions. Such a course can only impair the orderly conduct of the adjudication procedures prescribed by Congress, and would not be in the public interest.

### III. Current Plaintiff's Counsel May No Longer Serve As Advocate in This Case.

Rule 3.7(a) of the District of Columbia Bar Rules of Professional Conduct provides that, subject to certain exceptions not here relevant, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." As noted

15

above, much of the Motion Memorandum (e.g., pp. 13-17) is devoted to claims that various individuals at DCPS improperly failed or refused to provide to Plaintiff's counsel documents and/or information, on the basis of which the Defendants violated some perceived attorney-client relationship. Assertions concerning the conduct of, and communications with, DCPS' Mss. Diesner, Aliendre, Herbert and Harris-Lindsey are related at length. Similarly, as also noted above, the Motion Memorandum is fulsome in its conflict-of-interest assertions concerning Ms. Harris-Lindsey.

The sole factual predicate for most of these assertions and arguments is a sworn affidavit by Plaintiff's counsel, attached to the Motion Memorandum as Exhibit 6. In that affidavit, Mr. Howell recites the purported timing and content of telephone conversations with Mss. Diesner, Aliendre, Herbert and Harris-Lindsey, as well as Defendant's conduct (or inaction) with respect to "service" of documents on him.

Many of Mr. Howell's assertions are refuted by the declarations attached hereto. However, such conflicts as exist will, if this matter is to proceed further, require at the very least examination of Mr. Howell on his sworn statement. His testimony, if the issues raised in the Motion are to be addressed, will be genuinely needed. Moreover, given what has been told to DCPS by both Ms. Spencer and K.S.'s grandfather, questions concerning the fact and scope of Mr. Howell's representation have now also been raised. To that extent – since Mr. Howell has made himself the sole witness in support of the sometimes-remarkable, often inaccurate claims in the complaint and in the Motion – he may no longer serve as advocate. And the Defendants request that the Court so declare.

## CONCLUSION

For the reasons set forth above, the Plaintiff has failed to satisfy the four-prong test justifying the grant of interim injunctive relief. No imminent irreparable injury of any sort has been demonstrated. And harm both to the Defendants and the public interest in the event of a grant of the requested relief are readily apparent.

But most conspicuous is the absence of any showing of the Plaintiff's likelihood of prevailing on the merits. Indeed, the very nature of the merits claims – a mélange of angry assertions of procedural mistreatment – are uncertain or, where discernable, are neither supported nor defensible. To the extent a basic claim can be sifted from the Motion's presentation, it is that DCPS has somehow violated an obligation to the Plaintiff to immediately convene a due process hearing on the subject matter of the December 6 administrative complaint. However, Ms. Spencer, in writing, disclaimed any further pursuit of that complaint on December 14. And even if DCPS' December 21 receipt of Ms. Spencer's second letter can be viewed to have restarted the statutory timetables, the period for resolution meetings and for a due process hearing, have not yet run.

The Plaintiff is entitled to no Court-fashioned alternative to the statutory procedural scheme. Nor should the Court further entertain this action, designed as it is to gut the Congressional effort to encourage attorneyless discussions between parents and DCPS, in an effort to obviate the very litigation Plaintiff's counsel seems determined to precipitate. The Motion should be summarily denied.

    Respectfully submitted,

    ROBERT J. SPAGNOLETTI
    Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        */s/ Edward P. Taptich*_____
        EDWARD P. TAPTICH (012914)
        Chief, Equity Section 2


        /s/  *Veronica A. Porter*_____
        VERONICA A. PORTER (412273)
        Assistant Attorney General
        441 4th St., N.W., Sixth Floor South
        Washington, D.C. 20001
        (202) 724-6651

December 28, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHADONNA SPENCER,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | Civ. Action No. 05-2439 (RMU) |
| : | |
| **DISTRICT OF COLUMBIA, et al.,** : | |
| : | |
| **Defendants.** : | |

### **ORDER**

Upon consideration of Plaintiffs' Motion for Temporary Restraining Order or Alternatively a Preliminary Injunction, Defendants' Opposition thereto and the record herein, it is by the Court this _____ day of _____, 2006,

**ORDERED**: That Plaintiffs' Motion for Temporary Restraining Order or Alternatively a Preliminary Injunction is DENIED.

_____
UNITED STATES DISTRICT COURT JUDGE